JS 44   (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Knox, Thomas J.

## DEFENDANTS
Herman Gerel, LLP f/k/a Herman, Mathis, Casey, Kitchens & Gerel, LLP and UnitedHealthcare, Inc.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Fulton County, GA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
George Bochetto, Esquire, Bochetto & Lentz, P.C.
1524 Locust Street, Philadelphia, PA, (215) 735-3900

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question *(U.S. Government Not a Party)*

☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - | | |
| | Other | ☐ 560 Civil Detainee - | Alien Detainee | | |
| | ☐ 448 Education | Conditions of | (Prisoner Petition) | | |
| | | Confinement | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.A. 1332 (a)(1)
Brief description of cause:
Action for declaratory relief based on contract and affirmative claims.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $   in excess of $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE   N/A   DOCKET NUMBER   N/A

DATE
04/25/2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Thomas J. Knox | : | CIVIL ACTION |
| v. | : | |
| Herman Gerel, LLP f.k.a. Herman, | : | |
| Mathis, Casey, Kitchens & Gerel, LLP | | NO. |
| and UnitedHealthcare, Inc. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (x)

| | | |
|---|---|---|
| _April 25, 2012_ | _George Bochetto, Esq._ | _Plaintiff_ |
| **Date** | **Attorney-at-law** | **Attorney for** |
| _215-735-3900_ | _215-735-2455_ | gbochetto bochettoandlentz.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __1717 Arch Street, Suite 3820, Philadelphia, PA 19103__

Address of Defendant: __230 Peachtree Street NW, Suite 2260, Atlanta, GA 30303__

Place of Accident, Incident or Transaction: __Philadelphia, PA__

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?        Yes ☐   No ☒

*RELATED CASE, IF ANY*:

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations

7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)

7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases — Declaratory and then relief
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, __George Bochetto, Esquire__, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __April 25, 2012__   _____   __27783__
                            Attorney-at-Law      Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __April 25, 2012__   _____   __27783__
                            Attorney-at-Law      Attorney I.D.#

CIV. 609 (6/08)

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __1717 Arch Street, Suite 3820, Philadelphia, PA 19103__

Address of Defendant: __230 Peachtree Street NW, Suite 2260, Atlanta, GA 30303__

Place of Accident, Incident or Transaction: __Philadelphia, PA__

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☒   No☐

Does this case involve multidistrict litigation possibilities?    Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes☐   No☒

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases — Declaratory and then relief
(Please specify)

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, __George Bochetto, Esquire__, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __April 25, 2012__      Attorney-at-Law      __27783__ Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __April 25, 2012__      Attorney-at-Law      __27783__ Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THOMAS J. KNOX**<br>1717 Arch Street, Suite 3820<br>Philadelphia, PA 19103,<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br>**HERMAN GEREL, LLP, f/k/a HERMAN,<br>MATHIS, CASEY, KITCHENS & GEREL,<br>LLP**<br>230 Peachtree Street NW, Suite 2260<br>Atlanta, GA 30303<br><br>          **and**<br><br>**UNITEDHEALTHCARE, INC.**<br>5901 Lincoln Drive<br>Edina, MN 55426-1611,<br><br>                    **Defendants.** | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Thomas J. Knox, by his undersigned counsel, Bochetto & Lentz, P.C., files this Complaint against defendants Herman Gerel, LLP (f/k/a Herman Mathis Casey Kitchens & Gerel, LLP) ("Herman Gerel") and UnitedHealthcare, Inc. ("UnitedHealthcare") for declaratory and other relief pursuant to, among other laws, 28 U.S.C. § 2201, for the purpose of determining questions of actual controversy between the parties as more fully described below and to obtain affirmative relief.  In support of his Complaint, Mr. Knox avers as follows:

### THE PARTIES

1.      Plaintiff, Thomas J. Knox, is a citizen of the Commonwealth of Pennsylvania doing business at 1717 Arch Street, Suite 3820, Philadelphia, PA 19103.

2.       Defendant, Herman Gerel, LLP ("Herman Gerel"), upon information and belief, is a Georgia limited liability partnership with a principal place of business located at 230 Peachtree Street NW, Suite 2260, Atlanta, Georgia 30303.  Herman Gerel was formerly known as Herman, Mathis, Casey, Kitchens & Gerel, LLP ("Herman Mathis").

3.       Defendant UnitedHealthcare, Inc., upon information and belief, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 5901 Lincoln Drive, Edina, Minnesota 55426.

## JURISDICTION AND VENUE

4.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A. §§ 1332(a)(1) and 2201 because (a) the controversy is between citizens of different states and concerns disputed rights and obligations relating to matters in controversy exceeding the sum or value of $75,000; and (b) this is an action seeking a declaratory judgment resolving an actual controversy within the Court's subject matter jurisdiction.

5.       Venue is proper in this judicial district pursuant to 28 U.S.C.A. § 1391(a)(2) because a substantial part of the events giving rise to the matters at issue in this action occurred here and because pursuant to 28 U.S.C.A. §1391(c) defendant "resides" in this District.

6.       At all times relevant hereto, Herman Gerel provided the legal services that are the subject of the instant lawsuit through a consortium of law firms throughout the country, including the Pennsylvania-based law firm of Anapol and Schwartz, LLP, which maintains a principal place of business located at 1900 Delancey Place, Philadelphia, Pennsylvania 19103.

7.       Indeed, numerous depositions and much of the discovery took place in Philadelphia, Pennsylvania, at the local offices of Anapol and Schwartz, LLP, Stradley Ronon,

LLP, and Express Scripts' local counsel's offices, and Fidelity, the party to the Retainer

Agreements at issue in this lawsuit, had offices at Two Penn Center and 1835 Market Street in

Philadelphia, Pennsylvania.

       8.     Moreover, Defendant UnitedHealthcare has substantial operations in Philadelphia,

Pennsylvania, and all of the negotiations of the terms of the March 2004 Stock Purchase

Agreement between the Fidelity Stockholders and UnitedHealthcare was negotiated in

Philadelphia, Pennsylvania.

## FACTUAL BACKGROUND

       9.     This case involves a dispute over Plaintiff's alleged obligation to pay Defendant

Herman Gerel a contingent fee and costs in connection with legal services provided by Herman

Gerel in defense of a counterclaim filed against companies (Fidelity Insurance Co. and Fidelity

Benefit Administrators, Inc.) formerly owned by Plaintiff.

      10.    Plaintiff was not a party to the litigation in general nor the counterclaims

specifically, never retained Herman Gerel to represent him personally in connection with any

matter, and had no contract with Herman Gerel.

      11.    Nevertheless, Herman Gerel has demanded that Plaintiff personally pay it $1.25

million in fees and costs, and has threatened to bring suit against Knox in the event he does not

pay.

      12.    The underlying lawsuit at issue, Fidelity Insurance Co. v. Express Scripts, Inc.,

No. 4:03-CV-1521-SNL, E.D. Mo. ("the Litigation"), was a class action lawsuit filed in 2003 by

two entities of which Plaintiff was then the majority shareholder, Fidelity Insurance Co.

("Fidelity Insurance") and Fidelity Benefit Administrators, Inc. ("Fidelity Benefit") (collectively,

"Fidelity"), against Express Scripts, Inc., a Missouri company, and its subsidiaries.

3

13.     The claims filed by Fidelity in that lawsuit arose following Plaintiff's acquisition in or around 1999 of a majority interest in Fidelity, a provider of health insurance benefits for employer-sponsored plans.

14.     In the Litigation, Fidelity sought to recover millions of dollars that Express Scripts allegedly improperly retained for its own use and benefit while serving as Fidelity Insurance's pharmacy benefit manager.

15.     Fidelity originally engaged the services of the law firm Saul Ewing, LLP and entered into an hourly Retainer Agreement with it to file the Litigation in Maryland state court.

16.     When, however, Express Scripts removed the Lawsuit to the United States District Court for the Eastern District of Missouri, Fidelity had discussions with, and ultimately engaged the services of, the law firm of Herman Gerel (then, Herman Mathis), which had expertise in lawsuits (including class actions) against pharmaceutical benefit managers such as Express Scripts and which, although based in Georgia, worked with a consortium of national law firms—including the law firm of Anapol Schwartz in Philadelphia, Pennsylvania.  (A true and correct copy of the Eastern District of Missouri docket in the Litigation ("Litigation Docket") is attached hereto as Exhibit "A.")

### Fidelity Retains Herman Gerel To Perform
### Legal Services For Fidelity For A Contingent Fee

17.     On November 4, 2003, Herman Gerel's managing partner sent Fidelity a letter agreement memorializing the terms of Herman Gerel's future representation of Fidelity, which Herman Gerel agreed to do for a 26.5% contingency fee:

> For its representation of Fidelity in the "St. Louis case," Herman Mathis will receive a fee of 26.5% of the total gross amount recovered in the case (calculated before the reimbursement of any costs), together with the reimbursement of all reasonable litigation costs advanced on your behalf, including any audit fees.  Herman

> Mathis will attempt to recover attorneys' fees on your behalf from the defendants. Any fee amounts recovered from the defendants will be deemed "additional recovery" on which our 26.5% attorneys' fee will be based.

(See true and correct copy of the November 4, 2003 agreement, attached hereto as Exhibit "B," at ¶ 2.)

18.     Months later, on or around February 26, 2004, Express Scripts filed counterclaims in the Litigation alleging that Fidelity had failed to pay invoices billed by Express Scripts. (See Ex. "A," Litigation Docket.)

19.     Further discussions ensued between Fideltiy and Herman Gerel concerning the terms on which Herman Gerel would defend the counterclaims, resulting in a new retainer agreement calling for an increase in the contingency percentage Herman Gerel would receive.

20.     On July 21, 2004, Herman Gerel re-memorialized the terms of its representation of Fidelity (it being until then governed by the November 4, 2003 letter agreement), including both Fidelity's affirmative claims against Express Scripts and Express Scripts' counterclaims against Fidelity, with a formal retainer agreement ("Retainer Agreement"). (A true and correct copy of the July 21, 2004 Retainer Agreement is attached hereto as Exhibit "C.")

21.     Paragraph 1 of the Retainer Agreement defined the scope of Herman Gerel's representation of Fidelity, clearly distinguishing between its representation of Fidelity's affirmative claims and the counterclaims, as follows:

> 1.   REPRESENTATION.   The Lawsuit involves both (1) affirmative claims asserted by Fidelity against Express Scripts, Inc. ("ESI"), Fidelity's former pharmacy benefits manager or PBM ("PBM") (the "**Claims**"); and (2) counterclaims asserted by ESI against Fidelity Benefit Administrators, Inc. (the "**Counterclaims**"). Subject to the representations and warranties made herein and to the other provisions of this Retainer Agreement, HMG agrees to represent Fidelity both in the prosecution of the **Claims** and in defense of the **Counterclaims**.

> HMG will take all reasonable actions that are reasonably required to prosecute the Claims, to defend the Counterclaims, and otherwise to advance the interests of Fidelity. HMG will take reasonable steps to keep Fidelity informed of the Claims, Counterclaims, defenses, rulings and negotiations that materially affect the interests of Fidelity in this matter, and/or otherwise as the court may prescribe.

(Ex. "C," ¶ 1 (emphasis supplied).)

22.    Paragraph 4 of the Retainer Agreement set forth Herman Gerel's agreement to represent Fidelity in exchange for an increased 28-33% (up from 26.5%) contingency fee based on any "Amount Recovered" on behalf of Fidelity. (Ex. "C," ¶ 4.)

23.    Paragraph 4 went on to define the term "Amount Recovered," again clearly distinguishing between legal services in connection with the "Claims" and the "Counterclaims," and making clear that the "Amount Recovered" was related "solely on the recovery relating to the Claims" and not related to any settlement or judgment relating to the "Counterclaims":

> 4. CONTINGENCY FEE.
>
> The term "Amount Recovered" means the gross amount of any recovery **relating to the Claims** before the deduction of any advanced or incurred litigation costs, whether such sums are established by settlement or judgment. **Amount Recovered includes debt reduction, debt relief, and cancellation of any alleged indebtness [sic] of Fidelity. The Amount Recovered shall be based solely on the recovery relating to the Claims and shall not be reduced by any (1) setoff or offset taken by Fidelity, (2) judgment, settlement, or reduction in recovery caused by or relating to the Counterclaims, (3)** claim or lien asserted by any past, current, or future auditor of Fidelity, or (4) **any other reduction of damages caused by the conduct of Fidelity (or any affiliated person or entity) that does not relate directly to the Claims. . . .** If there is no Amount Recovered, no contingency or attorneys' fee shall be due.

(Ex. "C," ¶ 4 (emphasis added).)

24.    Thus, Herman Gerel was to receive an increased contingency percentage of the amount recovered on the "Claim" in consideration of defending the Counterclaim, and that

6

"Amount Recovered" was not to be reduced by any savings or reductions in debt realized by virtue of defending the Counterclaim.

25.     Under no circumstances did the Retainer Agreement provide that, if there was no Amount Recovered on the Claim, Herman Gerel was to receive a fee for any reduction or savings obtained on the Counterclaim.

26.     Further, in any event, Herman Gerel was to pay *all* costs, which could only be reimbursed to it from an Amount Recovered.

27.     Not only did Paragraph 4 conclusively state that "[i]f there is no Amount Recovered, no contingency or attorneys' fee shall be due," but the following paragraph of the Retainer Agreement further established that if there was "no Amount Recovered, Fidelity will not be responsible for the payment of any costs incurred in the Lawsuit":

> 5.  <u>COSTS</u>.  In addition to the fee, in the event of any recovery on behalf of Fidelity, whether by settlement or judgment, Fidelity shall pay all reasonable out-of-pocket costs that are incurred by HMG (or any other associated lawyers or firms) in the handling of the Lawsuit.  **If there is no Amount Recovered, Fidelity will not be responsible for the payment of any costs incurred in the Lawsuit**.

(Ex. "C," ¶¶ 4, 5 (emphasis supplied).)

28.     Plaintiff Thomas Knox signed the July 21, 2004 Retainer Agreement on behalf of Fidelity in his capacity as the Vice President of Fidelity.  (Ex. "C.")

29.     Plaintiff also signed a Shareholders' Consent, on behalf of himself as the majority, 80.39% shareholder of Fidelity and as a representative of the minority shareholders, assuring Herman Gerel that Fidelity was authorized to enter into the Retainer Agreement.  (Ex. "C.")

30.     At all times relevant to the formation of the Retainer Agreement, Plaintiff acted solely on behalf of and as Vice President of Fidelity.

31.     Moreover, Plaintiff at all times understood, in his capacity as majority shareholder and an officer of Fidelity, that pursuant to the Retainer Agreement, Herman Gerel would be paid a contingency fee for its legal services based on any "Amount Recovered," which amount was based solely on a recovery on the "Claims" and completely independent of any amount of judgment or settlement in connection with the "Counterclaims."

### Plaintiff And The Other Fidelity Shareholders
### Sell Their Shares To UnitedHealthcare

32.     In March 2004, Plaintiff and the other Fidelity shareholders (the "Stockholders") entered into an agreement to sell their shares of Fidelity Insurance Group, Inc. ("Fidelity Group"), which owned Fidelity Insurance and Fidelity Benefit, to defendant UnitedHealthcare (the "Stock Purchase Agreement"). (A true and correct copy of the Stock Purchase Agreement is attached hereto as Exhibit "D.")

33.     The Stock Purchase Agreement provided that Knox, as the Stockholders' Representative, had full representative authority to "contest, concede, settle, or compromise any claim" relating to the Litigation, "including any related claims or counterclaims." (See Ex. "D," Stock Purchase Agreement at § 1.08.)

34.     The Stock Purchase Agreement further provided that the Stockholders agreed to indemnify UnitedHealthcare against any claim, loss, or "amount paid in settlement, expense, or costs (including reasonable costs of investigation, defense, and legal fees and expenses," but that such indemnification obligations with respect to the Litigation would only survive through June 30, 2006. (See Ex. "D," Stock Purchase Agreement at §§ 9.01, 9.02.)

35.     After UnitedHealthcare acquired the stock of Fidelity Group, both Fidelity Insurance and Fidelity Benefit continued in business as subsidiaries of UnitedHealthcare, and Plaintiff Knox became an employee of UnitedHealthcare. (See Ex. "D.")

36.     Indeed, at the time Knox signed the July 21, 2004 Retainer Agreement as the Vice President of Fidelity, Knox was an employee of UnitedHealthcare.

**Express Scripts Files Third-Party Claims**
**Against Fidelity Group And UnitedHealthcare**

37.     Several years after the Stock Purchase Agreement, on March 22, 2007, Express Scripts filed a motion for leave to file a third party complaint against third party defendants Fidelity Group and UnitedHealthcare (collectively "the third party defendants") and a second amended counterclaim against Fidelity, which the court granted on April 23, 2007. (See Exhibit "A," Litigation Docket.)

38.     Express Scripts alleged that as the successor corporation to Fidelity, UnitedHealthcare was liable for any amounts owed by those entities to Express Scripts as a result of the Lawsuit.

39.     After Express Scripts filed its second amended counterclaim against Fidelity and a third party complaint, Herman Gerel and Fidelity entered into an Addendum to Retainer Agreement for Legal Services ("the Addendum"). The Addendum was effective as of July 1, 2007. (A true and correct copy of the Addendum is attached hereto as Exhibit "E.")

40.     The first paragraph of the Addendum provided that "[a]ll terms of the July 21, 2004 Retainer shall remain in full force and effect unless otherwise provided below." (Ex. "E.")

41.     Paragraph 1 of the Addendum provided that Herman Gerel would agree to expand the scope of its representation to include the third-party claims without any adjustment to the already increased contingency fee of 28-33% set forth in the July 21, 2004 Retainer Agreement, as follows:

> [Herman Mathis] will provide a "pro forma" defense to the Third-Party Claims without any adjustment to the current fee schedule as set forth in Section 4 of the July 21, 2004 Retainer. The term "pro

9

> forma defense" means filing an answer to the third-party complaint
> and preparing necessary related correspondence and
> communication with opposing counsel.

(Ex. "E," ¶ 1.)

42.     Herman Gerel further expressly noted that while it was not anticipated that anything more than a "pro forma" defense of the third-party claims would be necessary, if anything greater than such a "pro forma" defense were required, Herman Gerel had the right to withdraw from its contingency-fee based representation:

> Should it become necessary for [Herman Gerel] to provide legal representation to a greater degree than a pro forma defense, [Herman Gerel] retains the right to withdraw as defense counsel on the Third-Party Claims upon reasonable notice to the Stockholders.

(Ex. "E," ¶¶ 2, 3.)

43.     Knox signed the Addendum on behalf of Fidelity in his capacity as the "Former CEO by Authorization from UHC." (Ex. "E.")

44.     Knox also signed a Shareholders' Consent, on behalf of himself as the majority, 80.39% shareholder of Fidelity and as a representative of the minority shareholders, assuring Herman Gerel that Fidelity was authorized to enter into the Addendum. (Ex. "E.")

45.     Virtually, no "costs" as that term was defined by Herman Gerel, were ever incurred in conducting the "pro forma" defense.

46.     Both the Retainer Agreement and the Addendum were drafted solely by Herman Gerel.  So, too, was the original letter agreement dated November 4, 2003.

### Herman Gerel Requests Advances In The Form Of "Loans" From Knox For Expert Fees

47.     During the course of Herman Gerel's representation in the Litigation, Herman Gerel on several occasions requested that Knox, in his capacity as a former Fidelity Shareholder,

advance in the form of loans certain costs.  This request was made while all parties understood and agreed that *all* costs were the sole responsibility of Herman Gerel pursuant to the Retainer Agreement. (See Ex. "C" at ¶ 5.)

48.     At all times, Knox was assured that each of the advances was a "loan" to Herman Gerel, which Herman Gerel would repay either as interim recoveries were made in the Litigation (e.g., upon receiving funds from a then pending sanctions motion) or at the conclusion of the Litigation—win, lose, or draw.

49.     For instance, in the period February through June 2005, Knox advanced at least $51,973.32 in expert auditing expenses and costs to Morgan Healthcare Audits, LLC at the request of, and on behalf of, Herman Gerel. (See true and correct copy of the March 11, 2005, June 1, 2005, and July 11, 2005 invoices attached hereto as Exhibit "F.")

50.     In June 2009, Herman Gerel retained an audit expert in the Litigation, PBM Analyzers. (See true and correct copy of the June 5, 2009 retainer agreement between Herman Gerel and PBM Analyzers attached hereto as Exhibit "G.")

51.     At Herman Gerel's request, and based on the assurances that he would be repaid, Knox paid the $10,000 retainer fee on behalf of Herman Gerel. (See true and correct copy of check to PBM Analyzers and supporting invoice attached hereto as Exhibit "H.")

52.     Contrary to Herman Gerel's promises, Knox has never been repaid any of the monies advanced to Herman Gerel or third parties for Litigation costs.

**The Litigation Settlement**

53.     By way of orders issued on July 30, 2008 and July 7, 2011, Herman Gerel lost by way of summary judgment Fidelity's "Claims" against Express Scripts. (See Ex. "A," Litigation Docket.)

54.     On July 21, 2011, Plaintiff wrote to advise UnitedHealthcare that Fidelity and Express Scripts had agreed to settle the Counterclaims, with Fidelity to pay $350,000 to Express Scripts. (A true and correct copy of the July 21, 2011 letter is attached hereto as Exhibit "I.")

55.     In the July 21, 2011 letter, Plaintiff agreed to make the $350,000 payment on behalf of Fidelity, provided that UnitedHealthcare agreed that such payments "will satisfy the Shareholders' obligations under the Stock Purchase Agreement with respect to the indemnification of UHC in relation to ESI's counterclaim." (See Ex. "I.")

56.     UnitedHealthcare agreed to the terms by countersigning the July 21, 2011 letter, by which it "release[d] any and all claims against the Fidelity Shareholders that UHC may have under the indemnity provisions of the Stock Purchase Agreement arising from or in any way relating to ESI's counterclaim." (Id.)

57.     On August 8, 2011, Fidelity, Express Scripts and the third party defendants entered into a confidential Settlement and Release Agreement ("the Settlement"), pursuant to which Fidelity was obligated to pay Express Scripts the sum of $350,000 to settle the Counterclaims.

58.     Fidelity received no recovery from Express Scripts in connection with Fidelity's Claims against Express Scripts.

59.     As agreed in the July 21, 2011 letter, and on behalf of the Fidelity Stockholders, Mr. Knox paid the sum of $350,000 to Express Scripts in full and final settlement of the Litigation and in settlement of any claims for indemnification that UnitedHealthcare might have against the Fidelity Stockholders under the Stock Purchase Agreement.

60.     On August 8, 2011, Herman Gerel signed and filed with the court a stipulation of dismissal of the Litigation on behalf of Fidelity and UnitedHealthcare, with prejudice. (See Ex. "A," Litigation Docket.)

### Herman Gerel Demands Attorneys' Fees and Costs from Mr. Knox

61.     Despite that the Retainer Agreement is a contract between Herman Gerel and Fidelity concerning the payment of attorneys' fees and costs for services rendered to Fidelity, on August 11, 2011, Herman Gerel sent a letter to Mr. Knox demanding for the first time payment from him for services rendered on behalf of Fidelity defending the Counterclaims in the Litigation.  (A true and correct copy of the August 11, 2011 letter is attached hereto as Exhibit "J.")

62.     Herman Gerel claimed that because Fidelity ultimately settled the Counterclaims for $350,000 instead of the $2,867,064.41 demanded by Express Scripts (that being the amount of the principal plus 18% interest allegedly owed by Fidelity on the unpaid invoices), the difference represented a "reduction" out of which Herman Gerel could claim legal fees and costs. (See Ex. "J.")

63.     Herman Gerel claimed in its August 11, 2011 letter that the Retainer Agreement entitled it to "a fee of $750,631.25 and reimbursement of costs totaling $760,946.33," but then offered a discount, finally stating that its "bill is for $1.25 million, representing $650,000 in fees and $600,000 in costs."  (See Ex. "J.")

64.     Contrary to Herman Gerel's representations in its August 11, 2011 letter, the parties' settlement agreement obligating Fidelity to pay Express Scripts the sum of $350,000 did not result in any "Amount Recovered" on behalf of Fidelity within the meaning of the Retainer Agreement.

65.     The Retainer Agreement expressly provides that the "Amount Recovered shall be based solely on the recovery relating to the **Claims** and shall not be reduced by any (1) setoff or offset taken by Fidelity, (2) judgment, settlement, or reduction in recovery caused by or relating to the Counterclaims . . . ." (See Ex. "C" at ¶ 4 (emphasis supplied).)

66.     The Retainer Agreement further expressly excludes from the definition of "Amount Recovered" any debt reduction that "does not relate directly to the Claims."  (See Ex. "C" at ¶ 4.)

67.     The Retainer Agreement is unambiguous in its provision that if there is no Amount Recovered—which there was not—"no contingency or attorneys' fee shall be due," and "Fidelity will not be responsible for the payment of any costs incurred in the Lawsuit." (Ex. "C" at ¶¶ 4, 5.)

68.     Because the settlement of the parties' claims in the Litigation did not result in an "Amount Recovered" as defined in the Retainer Agreement, the Retainer Agreement does not entitle Herman Gerel to a contingency fee since Fidelity did not receive any funds in settlement of its Claims against Express Scripts.  To the contrary, Fidelity was obligated to pay Express Scripts $350,000 to settle the Litigation.

69.     Moreover, because Mr. Knox is not bound by the terms of the Retainer Agreement in his individual capacity, Mr. Knox is not and could not be indebted to Herman Gerel for any amount of attorneys' fees or costs.

70.     Indeed, if anyone or any entity is obligated to Herman Gerel for any amount (which is specifically not the case), it is UnitedHealthcare as the successor corporation to Fidelity.

71.     Further still, by Herman Gerel's own admission (see ¶¶ 1-3 of the Addendum), Herman Gerel only provided a "pro forma" defense to the Counterclaims, and its August 11, 2011 assertion is not only wrong, but with respect to the asserted "costs" of $600,000, is fraudulent.

72.     Finally, because UnitedHealthcare agreed to "release any and all claims against the Fidelity Shareholders that [it] may have under the indemnity provisions of the Stock Purchase Agreement arising from or in any way relating to ESI's counterclaim," UnitedHealthcare is precluded from seeking indemnification against Mr. Knox for any amounts that may be owed by UnitedHealthcare to Herman Gerel in connection with the Litigation. (See Ex. "J.")

## FIRST CLAIM FOR RELIEF—DECLARATORY JUDGMENT

### *Plaintiff v. All Defendants*

73.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

74.     An actual or present controversy exists between Mr. Knox and Herman Gerel concerning whether, under the terms of the Retainer Agreement and the Addendum, Mr. Knox has any obligation to pay attorneys' fees or costs to Herman Gerel for services rendered to Fidelity in the Litigation.

75.     An actual or present controversy exists between Mr. Knox and UnitedHealthcare concerning whether, under the terms of the July 21, 2011 letter, UnitedHealthcare released any claims for indemnification from Mr. Knox for amounts that may be owed by UnitedHealthcare to Herman Gerel in connection with the Litigation.

76.     First, Mr. Knox is not a party to any contract or agreement between Fidelity and Herman Gerel, and under no conceivable construction of any such agreement is Mr. Knox

personally indebted to Herman Gerel for attorneys' fees or costs for any amount, much less $1.25 million dollars.

77.     Moreover, to the extent the Retainer Agreement and Addendum might be misinterpreted to claim that the difference between the amount claimed in Express Scripts' Counterclaims against Fidelity ($2,867,064.41) and the amount paid on behalf of Fidelity to settle the Counterclaims ($350,000) constitutes an "Amount Recovered" (which is explicitly limited to amounts recovered in connection with Fidelity's claims against Express Scripts, and not the Counterclaims), it is UnitedHealthcare, as the successor company to Fidelity, that is liable to Herman Gerel for any fees or costs owed under the Agreement—not Mr. Knox individually.

78.     Nor is Mr. Knox or any of the other former Fidelity Shareholders liable to UnitedHealthcare for indemnification of any such amounts that might be owed to Herman Gerel, as 1) the Stockholders' indemnification obligations expired on June 30, 2006, and 2) on July 21, 2011, UnitedHealthcare expressly confirmed that it released Mr. Knox from any claims that it may have had against him for indemnification for amounts that may be owed by UnitedHealthcare to Herman Gerel in connection with the Litigation.

79.     A declaratory judgment concerning the parties' controversy will be practical and of utility to the parties as it will serve the purpose of deciding the parties' respective rights and obligations under the Retainer Agreement, the Addendum, and the July 21, 2011 letter.

80.     Mr. Knox has a prompt need for a declaration as to whether or not he is indebted to Herman Gerel for any attorneys' fees or costs under the Retainer Agreement and the Addendum.

81.    Mr. Knox has a prompt need for a declaration as to whether UnitedHealthcare released any claims it may have against Mr. Knox for indemnification.

WHEREFORE, Mr. Knox respectfully requests a judicial determination to declare that (1) he is not indebted to Herman Gerel for attorneys' fees or costs in the amount of $1.25 million dollars; (2) he is not indebted to Herman Gerel for any attorneys' fees or costs in any amount in connection with the services rendered by Herman Gerel on behalf of Fidelity in the Litigation; (3) UnitedHealthcare released any claims for indemnification from Mr. Knox; and (4) to grant such other relief as the Court deems appropriate under 28 U.S.C. § 2202.

## SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT

### *Plaintiff v. Herman Gerel*

82.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

83.    During the course of the Litigation, Mr. Knox advanced on behalf of Fidelity at least $61,000 in various expert costs.

84.    At all times, it was the express agreement of Fidelity and Herman Gerel that Herman Gerel would be responsible for all legal fees and costs, including expert fees, necessary for the Litigation. (See Ex. "B," November 4, 2003 letter agreement; Ex. "C," July 21, 2004 Retainer Agreement; and Ex. "E," Addendum.)

85.    Moreover, at the time Mr. Knox agreed to advance certain costs for expert fees throughout the Litigation, he was at all times assured by Herman Gerel that each of the advances was a "loan" to Herman Gerel, which Herman Gerel would repay.

86.    To date, Herman Gerel has failed to repay Mr. Knox for the at least $61,000 in advanced monies.

87.     As a result of Herman Gerel's failure to repay the loaned monies as promised, Mr. Knox has been and continues to suffer damages.

WHEREFORE, Mr. Knox respectfully requests this Honorable Court enter judgment in favor of Mr. Knox and against Defendant Herman Gerel in an amount in excess of $61,000, plus costs and statutory interest from the dates of payment, as well as any such other relief as the Court deems appropriate and just.

**THIRD CLAIM FOR RELIEF – INDEMNITY/CONTRIBUTION**

***Plaintiff v. UnitedHealthcare***

88.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

89.     Following the March 2004 sale of the Fidelity Stockholders' shares to UnitedHealthcare, UnitedHealthcare became the successor corporation to Fidelity.

90.     At the time Knox signed the July 21, 2004 Retainer Agreement, which he signed as the Vice President of Fidelity, Knox was an employee of UnitedHealthcare. (See, e.g., Ex. "C," Stock Purchase Agreement; Ex. "D," Retainer Agreement.)

91.     Further, at the time Knox signed the July 1, 2007 Addendum, which he signed on behalf of Fidelity in his capacity as the "Former CEO by Authorization from UHC," Knox was acting with the full knowledge and authority of UnitedHealthcare. (Ex. "E.")

92.     As the successor corporation to Fidelity, UnitedHealthcare is liable for any amounts owed by Fidelity to Herman Gerel for attorneys' fees or costs pursuant to the Retainer Agreement or the Addendum.

93.     Moreover, should Knox be found to owe Herman Gerel any amount for attorneys' fees or costs pursuant to the Retainer Agreement or Addendum, UnitedHealthcare should be

18

required to indemnify and hold Knox harmless as Knox at all times acted with respect to the Retainer Agreement and Addendum with the knowledge and authority of UnitedHealthcare.

WHEREFORE, Mr. Knox respectfully requests this Honorable Court enter a judgment in favor of Mr. Knox and against Defendant UnitedHealthcare requiring UnitedHealthcare to indemnify and hold Mr. Knox harmless against any money judgment obtained by Herman Gerel against him in connection with alleged attorneys' fees and costs owed pursuant to the Retainer Agreement and Addendum, as well as costs and any such other relief as the Court deems appropriate and just.

## FOURTH CLAIM FOR RELIEF – DECEIT/FRAUD

### *Plaintiff v. Herman Gerel*

94.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

95.     Defendants made a false representations of fact when they forwarded to Knox a demand for $1.25 million dollars, asserting that: a) Knox was liable to pay a fee of $650,000, when no such fee is payable by Knox; and separately, b) that $600,000 in "costs" were incurred in defense of the Counterclaim; and separately, c) that Knox was liable to pay such costs.

96.     The misrepresentations that Knox is liable to pay the fees was intended to mislead, deceive, and defraud Knox into relying on such misrepresentation and securing from Knox monies Herman Gerel was not entitled to.

97.     The misrepresentations that Knox is liable to pay the costs related to the Counterclaims was intended to mislead, deceive and defraud Knox into relying upon such misrepresentations to secure monies from Knox Herman Gerel was not entitled to.

98.     In fact, the costs were largely, if not exclusively, incurred in connection with the prosecution of the Claim, and not the Counterclaims, and under the engagement documents drafted exclusively by Herman Gerel, such costs are not recoverable.

99.     Knox has been forced to bring this action in reliance on Defendant Herman Gerel's misrepresentations of facts and its promise to file suit against Knox if he fails to make payment.

100.    By virtue of Defendant Herman Gerel's deliberate misrepresentations, deceit, and fraud, Knox has been damaged by virtue of having to hire counsel, by virtue of having to file this declaratory action against Herman Gerel and United Healthcare, the latter of which he has in the past and continues to conduct business with, and by otherwise being threatened with a suit for substantial amounts of monies to which Herman Gerel has no entitlement.

101.    The injuries described herein are directly and proximately caused by the intentionally deceitful and fraudulent conduct of Herman Gerel as described herein.

WHEREFORE, Plaintiff requests judgment against Defendant Herman Gerel in an amount in excess of $75,000, together with interest, costs, and attorneys' fees and such other relief as the Court deems just.

Respectfully submitted,

BOCHETTO & LENTZ, P.C.

Dated: April 25, 2012

George Bochetto, Esquire
PA Id. No. 27783
Tricia Desmarais Clark, Esquire
PA Id. No. 206004
1524 Locust Street
Philadelphia, PA  19102
Ph: (215) 735-3900
Fx: (215) 735-2455
*Attorneys for Plaintiff*

20