# EXHIBIT C

# RETAINER AGREEMENT FOR LEGAL SERVICES

This Retainer Agreement for Legal Services ("Retainer Agreement") is entered into as of the date shown below by and between Fidelity Insurance Company and Fidelity Benefit Administrators, Inc. ("Fidelity") and the Herman Mathis Group ("HMG").[1]

1. **REPRESENTATION.** Fidelity hereby retains and employs HMG to represent it, and HMG hereby agrees to represent Fidelity, in the matter captioned, *Fidelity Insurance Company vs. Express Scripts, Inc.*, E.D. Mo., No. 4:03-CV-1521SNL ("the Lawsuit"). The Lawsuit involves both (1) affirmative claims asserted by Fidelity against Express Scripts, Inc. ("ESI"), Fidelity's former pharmacy benefits manager or PBM (the "Claims"); and (2) counterclaims asserted by ESI against Fidelity Benefit Administrators, Inc. (the "Counterclaims"). Subject to the representations and warranties made herein and to the other provisions of this Retainer Agreement, HMG agrees to represent Fidelity both in the prosecution of the Claims and in defense of the Counterclaims. HMG will take all reasonable actions that are reasonably required to prosecute the Claims, to defend the Counterclaims, and otherwise to advance the interests of Fidelity. HMG will take reasonable steps to keep Fidelity informed of the Claims, Counterclaims, defenses, rulings and negotiations that materially affect the interests of Fidelity in this matter, and/or otherwise as the court may prescribe.

2. **WAIVER OF POTENTIAL CONFLICTS OF INTEREST**

    A. Fidelity Benefit Administrators, Inc. is a Third-Party Administrator or "TPA" that provides administrative services to its insured and self-insured plans. Fidelity Benefit Administrators, Inc. may be deemed to be or to have been a fiduciary for some purposes in its role as a TPA for certain self-insured funds or plans. This could result in a potential conflict of interest if HMG is engaged or appointed to represent a plan or putative class of plans seeking to recover from their fiduciaries. Fidelity believes that there is a relatively low potential for a conflict of interest in this area because its self-insured funds generally choose their PBMs independently and contract with them directly, not through Fidelity Benefit Administrators, Inc. Fidelity agrees, however, that if such an actual or potential conflict of interest arises in the future, it will waive the conflict so long as HMG determines that it can exercise independent professional judgment on behalf of each client and complies with the Rules of Professional Conduct.

    B. Fidelity was acquired by UnitedHealthcare, Inc. ("UHI") on May 11, 2004, and is a wholly-owned subsidiary of UHI. By letter dated June 24, 2004 (attached), HMG disclosed to Fidelity all known potential conflicts of interest relating to its (or its member firms' or attorneys') litigation adverse to UHI. As part of UHI's acquisition of Fidelity, the Fidelity shareholders retained all interest in the Claims and agreed to indemnify UHI for any liability relating to issues alleged in the Counterclaims. Accordingly, UHI has no direct financial interest in the outcome of the Lawsuit. Fidelity and Fidelity's shareholders hereby waive any actual or potential conflicts of interest set forth in the June 24, 2004, letter

---

[1] The members of the Herman Mathis Group are listed in Exhibit A.

and agree to use their best efforts to cause UHI promptly to waive any such actual or potential conflicts as well.

3. COOPERATION AMONG ATTORNEYS AND FIRMS. Fidelity understands and agrees that it may be necessary or desirable to associate as co-counsel other attorneys and/or firms to prosecute Fidelity's claims. Fidelity understands and agrees that HMG may also work with a steering committee, class counsel, or other attorneys that may be appointed by the court. Further, Fidelity understands and agrees that HMG may assign any partner, associate attorney, law clerk, or paralegal employed by them to work on Fidelity's case.

4. CONTINGENCY FEE. Fidelity agrees to pay HMG a contingency fee based on a percentage of the Amount Recovered on behalf of Fidelity as follows:

| Amount Recovered | Fee |
|---|---|
| Up to $1 million | 28% |
| $1 million – $2 million | 30% |
| Over $2 million | 33% |

The term "Amount Recovered" means the gross amount of any recovery relating to the Claims before the deduction of any advanced or incurred litigation costs, whether such sums are established by settlement or judgment. Amount Recovered includes debt reduction, debt relief, and cancellation of any alleged indebtness of Fidelity. The Amount Recovered shall be based solely on the recovery relating to the Claims and shall not be reduced by any (1) setoff or offset taken by Fidelity, (2) judgment, settlement, or reduction in recovery caused by or relating to the Counterclaims, (3) claim or lien asserted by any past, current, or future auditor of Fidelity, or (4) any other reduction of damages caused by the conduct of Fidelity (or any affiliated person or entity) that does not relate directly to the Claims. HMG will attempt to obtain a judgment, order, or settlement that requires ESI to pay some or all of Fidelity's attorneys' fees and litigation costs. In that event, any and all fees actually collected from ESI will belong to Fidelity as part of the total Amount Recovered, against which the Contingency Fee is owed. No fee shall be due until all appeals are final. In the event that the fee must be approved by the Court, no fee shall be due until such fee has been approved. If there is no Amount Recovered, no contingency or attorneys' fee shall be due.

5. COSTS. In addition to the fee, in the event of any recovery on behalf of Fidelity, whether by settlement or judgment, Fidelity shall pay all reasonable out-of-pocket costs that are incurred by HMG (or any other associated lawyers or firms) in the handling of the Lawsuit. If there is no Amount Recovered, Fidelity will not be responsible for the payment of any costs incurred in the Lawsuit. Examples of such costs include filing fees, costs of serving legal process, computerized legal research costs, deposition costs, court reporter's fees, other court costs, messenger and other delivery charges, long distance telephone charges, facsimile transmission charges, photocopying charges, postage, overnight express delivery costs, expert witness fees and costs, consultant fees, investigator fees,

charges incurred for preparation of documentary evidence, and charges incurred for other professional advice, if necessary (*e.g.*, appraisals, accounting, and tax advice).

Fidelity agrees that some litigation costs are common costs and may inure to the benefit of other clients of HMG that might be pursuing similar claims against ESI and other PBMs. Common costs may be allocated by HMG among clients so long as the allocation is done fairly and the amount allocated to Fidelity is no greater that 2% of the Amount Recovered.

HMG will attempt to obtain a judgment, order, or settlement that requires ESI to pay some or all of Fidelity's litigation costs. Any and all litigation costs collected from ESI will belong to HMG and will be credited against the costs that Fidelity owes to HMG.

6. NO GUARANTEE. HMG cannot and does not make any guarantee of success regarding Fidelity's Claims or the defense of the Counterclaims.

7. COOPERATION. Fidelity agrees to cooperate completely with HMG and to be available for conferences, depositions, negotiations, and court appearances. Fidelity agrees to review all materials sent to it by HMG promptly upon receipt.

8. LIENS. Fidelity has disclosed that two of its former auditors have asserted or may assert claims for fees based on any recovery made in the Lawsuit. Fidelity represents and warrants that the cumulative sum of the auditor claims do not exceed $347,280.83 ($47,280.83 plus 30% of the first $1 million of recovery). Fidelity is not aware of any other actual or potential liens or claims asserted, or that may be asserted, against any Amount Recovered.

9. WITHDRAWAL/TERMINATION. At any time and with reasonable notice, Fidelity or HMG may withdraw from this Retainer Agreement with or without cause. In the event HMG decides to withdraw from this Retainer Agreement, HMG shall give Fidelity adequate advance notice in writing and otherwise comply with the Rules of Professional Conduct. In the event of withdrawal, HMG agrees to cooperate completely with Fidelity and to make available to Fidelity or its replacement counsel all records pertinent to this matter. HMG shall have a lien on any Amount Recovered by Fidelity, whether by settlement or judgment, for services rendered and costs advanced on Fidelity's behalf. At the time of withdrawal, HMG will provide Fidelity, at Fidelity's request, with a written statement showing the costs advanced and descriptions of the services rendered on Fidelity's behalf.

10. GEORGIA LAW GOVERNS. This Retainer Agreement shall be governed by the laws of the State of Georgia without regard to its conflict-of-law rules.

11. AUTHORITY. The undersigned hereby represent and warrant that they have actual, express authority to enter into this agreement on behalf of their principals. Fidelity further represents and warrants that it has the full legal right to control the Lawsuit and to retain HMG to represent it in the Lawsuit under the terms set forth in this Retainer Agreement, and that it needs no consent from UHI or from other any party.

12. <u>ENTIRE AGREEMENT</u>. This Retainer Agreement represents the entire agreement between the parties with respect to the subject matter hereof and it supercedes any and all prior agreements, whether oral or written, with respect to the subject matter hereof. No amendment to this Agreement is valid unless it is in writing and signed by all parties.

Executed this 21st day of July, 2004.

The Herman Mathis Group

By:

_____
EDWARD C. KONIECZNY
Managing Partner
Herman Mathis Casey
    Kitchens & Gerel, LLP

Fidelity Insurance Company and
Fidelity Benefit Administrators, Inc.

By: _____

_____
THOMAS J. KNOX
Vice President


<u>CONSENT of the STOCKHOLDERS of FIDELITY INSURANCE GROUP, INC.</u>:

Thomas J. Knox, for himself and as the Stockholders' Representative, consents to the Retainer Agreement.

Signature: _____
                Thomas J. Knox

4