IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS J. KNOX                          :
                                        :          CIVIL ACTION
            v.                          :
                                        :          NO. 12-2238
HERMAN GEREL, LLP, ET AL.               :

**SURRICK, J.**                                    **JUNE  24 , 2014**

## MEMORANDUM

Presently before the Court is Defendant United Healthcare Inc.'s Motion to Dismiss

Plaintiff's Complaint (ECF No. 8), Defendant United Healthcare Inc.'s Motion to Dismiss

Plaintiff's Cross-Claim (ECF No. 26), and Defendant United Healthcare Inc.'s Motion to

Dismiss Defendant Herman Gerel's First Amended Cross-Claim (ECF No. 33).  For the

following reasons, Defendant United Healthcare Inc.'s Motions will be granted in part and

denied in part.

## I.      BACKGROUND

### A.      Factual Background

#### 1.      *The Parties*

This lawsuit arises out of a dispute over the alleged obligations of Plaintiff Thomas J.

Knox to pay Defendant, the law firm of Herman Gerel, LLP ("Herman Gerel"),[1] a contingent fee

and costs in connection with legal services provided by Herman Gerel in defending a

counterclaim filed against Fidelity Insurance Co. ("Fidelity Insurance") and Fidelity Benefit

---

[1] Herman Gerel was formerly known as Herman, Mathis, Casey, Kitchens & Gerel, LLP.
(Compl. ¶ 2.)  We refer to Defendant as Herman Gerel.

Administrator's, Inc. ("Fidelity Benefit"), (collectively "Fidelity").  (Compl. ¶ 9, ECF No. 1.)[2]

Plaintiff is a citizen of Pennsylvania, and was formerly a majority shareholder of Fidelity, with

80.39 percent of the shares.  (Compl. ¶¶ 1, 12, 29.)  Herman Gerel is a limited liability

partnership with its principal place of business in Georgia.  (*Id.* at ¶ 2.)  Defendant

UnitedHealthcare, Inc. ("UHI") is a Delaware corporation with its principal place of business in

Edina, Minnesota.  (*Id.* at ¶ 3.)  UHI acquired Fidelity in March 2004.  (*Id.* at ¶ 8.)

### 2.     *2004 Retainer Agreement*

Plaintiff retained the services of Herman Gerel to represent Fidelity in the matter of

*Fidelity Insurance Co. v. Express Scripts, Inc.*, No. 03-1521 (E.D. Mo.) (hereinafter "the ESI

Litigation")—a 2003 class action lawsuit filed by Fidelity against Express Scripts, Inc. ("ESI"), a

Missouri based pharmacy benefit management company.  (*Id.* at ¶¶ 12, 16.)[3]  On November 4,

2003, Herman Gerel's managing partner sent Fidelity a letter memorializing the terms of Herman

Gerel's future representation of Fidelity.  (Compl. ¶ 17.)  Herman Gerel had agreed to represent

Fidelity for a 26.5 percent contingency fee.  (*Id.* (citing Nov. 4, 2003 Letter, Compl. Ex. B).)[4]

On February 26, 2004, ESI filed counterclaims against Fidelity alleging that Fidelity had

failed to make payments on invoices billed by ESI.  (Compl. ¶ 18.)  ESI demanded $1.5 million,

plus interest for its counterclaim.  (*See* Settlement Letter, Compl. Ex. I.)  On July 21, 2004,

following the filing of the counterclaim, Herman Gerel and Fidelity re-negotiated the terms of

the retainer agreement; implementing a sliding contingency fee scale of 28 to 33 percent

---

[2] Fidelity is a provider of health insurance benefits for employer sponsored plans.
(Compl. ¶ 13.)

[3] ESI served as Fidelity Insurance's pharmacy benefit manager.  (*Id.* at ¶ 14.)  Fidelity
alleged that Express Scripts improperly retained millions of dollars for its own use and benefit.
(*Id.*)

[4] Herman Gerel asserts that the letter was a draft agreement and was never signed by
anyone on behalf of Fidelity.  (Answer ¶ 17, ECF No. 10.)

depending on the "amount recovered" on behalf of Fidelity.  (Compl. ¶ 22 (citing July 21, 2004

Retainer Agreement ¶ 4 ("2004 Retainer Agreement"), Compl. Ex. C).)

Paragraph 1 of the 2004 Retainer Agreement defined the scope of Herman Gerel's

representation of Fidelity as follows:

> 1.  REPRESENTATION . . . The Lawsuit involves both (1) affirmative claims asserted by Fidelity against [ESI], Fidelity's former pharmacy benefits manager or PBM ("PBM") (the Claims); and (2) counterclaims asserted by ESI against Fidelity Benefit Administrators, Inc. (the Counterclaims). Subject to the representations and warranties made herein and to the other provision of this Retainer Agreement, [Herman Gerel] agrees to represent Fidelity both in the prosecution of Claims and in defense of Counterclaims. [Herman Gerel] will take all reasonable actions that are reasonably required to prosecute the Claims, to defend the Counterclaims, and otherwise to advance the interests of Fidelity. [Herman Gerel] will take reasonable steps to keep Fidelity informed of the Claims, Counterclaims, defenses, rulings and negotiations that materially affect the interest of Fidelity in this matter, and/or otherwise as the court may prescribe.

(2004 Retainer Agreement ¶ 1.)

In turn, the "Amount Recovered" was defined as:

> [T]he gross amount of any recovery relating to the Claims before the deduction of any advanced or incurred litigation costs, whether such sums are established by settlement or judgment.  Amount recovered includes debt reduction, debt relief, and cancellation of any alleged indebtness [sic] of Fidelity.  The Amount Recovered shall be based solely on the recovery relating to the Claims and shall not be reduced by any (1) setoff or offset taken by Fidelity, (2) judgment, settlement, or reduction in recovery caused by or relating to the Counterclaims, (3) claim or lien asserted by any past, current, or future auditor of Fidelity, or (4) any other reduction of damages caused by the conduct of Fidelity (or any affiliated person or entity) that does not relate directly to the Claims. . . . If there is no Amount Recovered, no contingency or attorney's fees shall be due.

(*Id*. at ¶ 4.)

Plaintiff signed the 2004 Retainer Agreement on behalf of Fidelity in his capacity as

Fidelity's Vice President.  (Compl. ¶ 28 (citing 2004 Retainer Agreement).)  The 2004 Retainer

Agreement says it was "[e]xecuted this 21st day of July, 2004."  (2004 Retainer Agreement.)

### 3.      Acquisition of Fidelity Insurance Group, Inc. by UnitedHealthcare

In the midst of the then ongoing ESI Litigation, in March of 2004, Plaintiff and other Fidelity Insurance Group, Inc. ("Fidelity Group") stockholders ("Fidelity Stockholders"), pursuant to a Stock Purchase Agreement ("SPA"), sold their shares of Fidelity Group to UHI. (Compl. ¶ 32 (citing SPA, Compl. Ex. D).)[5] After the sale of Fidelity Group's shares to UHI, both Fidelity Insurance, and Fidelity Benefit continued in business as fully-owned operating subsidiaries of UHI. (Compl. ¶ 35.) Concurrent with the execution of the SPA, Plaintiff entered into an employment agreement with UnitedHealthcare Services, Inc. (*See* SPA 1.)[6]

Pursuant to the SPA, the Fidelity Stockholders were to receive all proceeds from the ESI Litigation. (*Id.* at § 1.02(a).) The "ESI Proceeds" were defined as "the proceeds (it being acknowledged that the Stockholders or the Stockholders' Representative shall fund all related defense costs and expenses directly, and not out of the Escrow Funds) recovered by [Fidelity Group] in connection with the pending litigation between [Fidelity Group] and Express Scripts, Inc." (*Id.* § 1.02(a)(iii).)[7] The SPA further provided that:

> Promptly following the final nonappealable disposition of all claims and counterclaims between ESI and [Fidelity Group] and any of the Subsidiaries, and the receipt by [Fidelity Group] and the Subsidiaries of all amounts owing to them relating to such claims and counterclaims, [UHI] shall cause [Fidelity Group] to deliver the ESI Proceeds to the Stockholders by wire transfer of immediately available funds to the Stockholders' Representative for distribution to the Stockholders . . . .

(SPA § 1.08.)

---

[5] Fidelity Group owned Fidelity Insurance and Fidelity Benefit. (*Id.* at ¶ 32.)

[6] None of the parties indicates how UnitedHealthcare Services, Inc. is related to the named party UHI. The parties continue to claim that Plaintiff was employed by UHI. We will analyze the claims assuming the parties' representations are accurate. (*See id.* at ¶ 35; HG's Am. Cross-Claim ¶ 25.)

[7] Plaintiff was appointed as the Fidelity Stockholders' Representative. (*Id.* at § 11.14.)

In addition, the Fidelity Stockholders agreed to "indemnify [UHI] . . . and hold them harmless against any claim, loss, liability, deficiency, damages, amount paid in settlement, expense or costs (including reasonable costs of investigation, defense and legal fees and expenses)" arising from the ESI Litigation.  (*Id.* § 9.02; Schedule § 9.02(d).)  Plaintiff, as the Stockholders' Representative, had the authority to "contest, concede, settle, or compromise any claim relating to [Fidelity Group's] pending litigation with ESI (including any related claims or counterclaims) without the consent of [UHI] . . . ."  (Compl. ¶ 33 (citing SPA § 1.08).) However, if

> (a) the claim seeks relief other than the payment of monetary damages, (b) the subject matter of the claim relates to the ongoing business of [Fidelity], which claim, if decided against [Fidelity], would adversely affect the ongoing business or reputation of [Fidelity] or (c) [UHI] would not be fully indemnified with respect to such claim, then, in each such case, [UHI] and the Stockholder Representative shall jointly participate in all decisions regarding such claim . . . .

(SPA § 1.08.)

Subsequent to the execution of the SPA, Herman Gerel and Plaintiff entered into the aforementioned 2004 Retainer Agreement.  The 2004 Retainer Agreement addressed the acquisition of Fidelity by UHI, stating that:

> Fidelity was acquired by UHI on May 11, 2004 and is a wholly-owned subsidiary of UHI.  By letter dated June 24, 2004 (attached), [Herman Gerel] disclosed to Fidelity all known potential conflicts of interest relating to its (or its members firms' or attorneys') litigation adverse to UHI.  **As part of UHI's acquisition of Fidelity, the Fidelity shareholders retained all interest in the Claims and agree to indemnify UHI for any liability relating to issues alleged in the Counterclaims.  Accordingly, UHI has no direct financial interest in the outcome of the Lawsuit.**

(2004 Retainer Agreement ¶ 2(B) (emphasis added).)  Plaintiff signed the 2004 Retainer agreement in his capacity as Vice-President of Fidelity, and executed the agreement on behalf of

"himself and as the Stockholders' Representative;" thereby giving the Fidelity Stockholders' consent to the agreement.  (2004 Retainer Agreement; Compl. ¶ 29.)

### 4.    *ESI's Third-Party Claims Against Fidelity Group and UHI*

On April 23, 2007, the district court granted ESI leave to file a second amended counterclaim against Fidelity, and a third-party claim against Fidelity Group and UHI.  (Compl. ¶ 37.)[8]  ESI alleged that UHI was liable for any amount owed by Fidelity as a result of the litigation.  (Compl. ¶ 38.)  On July 1, 2007, as a result of the filing of the third-party claim, Herman Gerel and Fidelity entered into an Addendum to Retainer Agreement for Legal Services ("2007 Addendum").  (*Id.* at ¶ 39.)  The 2007 Addendum stated that "[a]ll terms of the July 21, 2004 Retainer shall remain in full force and effect unless otherwise provided below."  (2007 Addendum 1, Compl. Ex. E.)  The 2007 Addendum reiterated the terms of the SPA, stating that the "Stockholders have agreed to defend and hold UHI and [Fidelity Group] harmless from the Third-Party Claims pursuant to the terms of the Stock Purchase Agreement dated March 20, 2004."  (*Id.*)  Plaintiff, as the authorized representative of the Fidelity Stockholders retained the services of Herman Gerel to defend the third-party claims.  (*Id.*)[9]  Herman Gerel agreed to provide a "pro forma defense to the Third-Party Claims" without adjusting the contingency fee structure set forth in the 2004 Retainer Agreement.  (2007 Addendum 1.)  Plaintiff signed the 2007 Addendum on behalf of Fidelity as the "[f]ormer CEO by Authorization from [UHI]."  (*Id.*

---

[8] In granting leave to file a third-party claim against UHI, the court stated that "[a]ny award against Fidelity Benefit would be illusory," as Fidelity was no longer an operating concern after the acquisition by UHI.  *Fidelity Ins. Co. v. Express Scripts, Inc.*, No. 03-1521 (E.D. Mo.), at ECF No. 220.

[9] Pursuant to § 9.04 of the SPA, the Fidelity Stockholders had the right to retain legal counsel to defend Third-Party Claims.  (2007 Addendum 1.)

at 2.)  Plaintiff also signed the 2007 Addendum on behalf of "himself and as the Stockholders'

Representative" thereby providing the consent of the Fidelity Stockholders.  (*Id.*)

        5.     *The ESI Litigation*

During the course of the litigation, Plaintiff, in his capacity as former Fidelity

Shareholder, advanced certain costs to Herman Gerel in the form of loans.  (Compl. ¶ 47.)[10]

Plaintiff alleges that all "parties understood and agreed that all costs were the sole responsibility

of Herman Gerel pursuant to the retainer agreement."  (Compl. ¶ 47 (citing 2004 Retainer

Agreement ¶ 5).)  Plaintiff claims that Herman Gerel assured him that the advances constituted a

loan, and that Herman Gerel would repay Plaintiff as interim recoveries were made during the

course of the litigation, or at the conclusion of the litigation, regardless of the outcome.  (*Id.* at ¶

48.)  Plaintiff has not recovered the funds he advanced to third parties or Herman Gerel for

litigation costs.  (*Id.* at ¶ 52.)

Ultimately, Fidelity did not prevail in its suit against ESI.  (*Id.* at ¶ 53.)  The court

granted summary judgment in favor of ESI and against Fidelity on their claims, leaving ESI's

$1.5 million counterclaim intact.  (*Id.*; Settlement Letter.)  In a letter dated July 21, 2011,

Plaintiff advised UHI that Fidelity and ESI agreed to settle the counterclaims, with Fidelity to

pay ESI $350,000.  (*Id.* at ¶ 54; Settlement Letter.)  Plaintiff stated that on behalf of the Fidelity

Shareholders, he was "prepared to pay ESI directly."  (Settlement Letter.)  However, before he

made any payments, Plaintiff requested that UHI confirm that the "direct payment to ESI will

satisfy the Shareholders' obligations under the [SPA] with respect to the indemnification of

---

[10] Between February and June 2005, Plaintiff advanced at least $51,973.32 to Morgan
Healthcare Audits, LLC at the request of, and on behalf of, Herman Gerel, for expert auditing
expenses and costs.  (*Id.* at ¶ 49 (citing Morgan Healthcare Invoices, Compl. Ex. F).)  In June of
2009, Plaintiff paid a $10,000 retainer fee on behalf of Herman Gerel to PBM Analyzers, LLC, a
company which provides pharmacy benefit management contract compliance audit and
consulting services.  (*Id.* at ¶¶ 50, 51; PMB Retainer, Compl. Ex. G.)

[UHI] in relation to ESI's counterclaim." (*Id.*) UHI agreed to these terms and signed the letter

thereby "releas[ing] any and all claims against Fidelity Shareholders that [UHI] may have under

the indemnity provisions of the SPA arising from or in any way relating to ESI's counterclaim . .

. ." (*Id.*) As agreed upon in the Settlement Letter, Plaintiff paid the sum of $350,000 to ESI in

full and final settlement of the ESI Litigations. (Compl. ¶ 59.)

                6.     *Herman Gerel Demands Attorney's Fees*

On August 11, 2011, Herman Gerel sent a letter to Plaintiff demanding payment of $1.25

million for services rendered on behalf of Fidelity defending ESI's counterclaims. (*Id.* at ¶ 61

(citing August 11, 2011 Letter ("Demand Letter"), Compl. Ex. J).)[11] Herman Gerel claimed that

because ESI settled its counterclaim for $350,000 instead of $2,867,064.41—that is, the principal

amount plus 18 percent interest for the unpaid invoices—Herman Gerel was entitled to fees and

costs for the "significant reduction in ESI's counterclaim . . . ." (Demand Letter 1.)

**B.    Procedural Background**

                1.     *Plaintiff's Complaint*

On June 15, 2012, Plaintiff filed the instant action requesting, among other relief, a

declaratory judgment against Herman Gerel and UHI. Plaintiff alleges that he is "not a party to

any contract or any agreement between Fidelity and Herman Gerel," and thus cannot be

personally liable for attorney's fees or costs that resulted from the ESI Litigation. (Compl. ¶ 76.)

Moreover, Plaintiff maintains that to the extent any fees or costs are due under the 2004 Retainer

Agreement, UHI, as the successor company to Fidelity, is liable. (*Id.* at ¶ 77.) In addition,

Plaintiff asserts that neither he, nor any other Fidelity Shareholders, are liable to UHI for

indemnification of any amount that might be owed to Herman Gerel resulting from the ESI

Litigation. (*Id.* at ¶ 78.) Plaintiff essentially seeks a judicial determination that he does not owe

---

[11] The $1.25 million demand represents $625,000 in fees and $600,000 in costs.

Herman Gerel for attorneys' fees or costs related to the ESI Litigation and that UHI released any claims for indemnification from Plaintiff.

Plaintiff also brings an indemnity and contribution action against UHI, requesting that this Court enter judgment in favor of Plaintiff and against UHI requiring UHI to indemnify and hold Plaintiff harmless against any money judgment obtained by Herman Gerel in connection with alleged attorneys' fees and costs owed pursuant to the 2004 Retainer Agreement and 2007 Addendum.  (*Id.* at ¶¶ 88-93.)

Finally, Plaintiff brings a breach of contract claim and a fraud claim against Herman Gerel.  Plaintiff alleges that Herman Gerel's failure to repay Plaintiff for the $61,000 he advanced to the law firm for expert costs constitutes a breach of the Retainer Agreement.  (*Id.* at ¶¶ 82-87.)  In addition, Plaintiff claims that Herman Gerel made false representations of fact when it demanded that Plaintiff pay $1.25 million in attorneys' fees and costs.  Plaintiff contends that Herman Gerel misrepresented to Plaintiff that he was liable for these fees, and it intended to mislead, deceive, and defraud Plaintiff into relying on such misrepresentations.

On June 15, 2012, UHI filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 8) and accompanying memorandum (UHI's 1st Mot., ECF No. 9).  On July 6, 2012, Plaintiff filed a Response in opposition to UHI's Motion to Dismiss.  (Pl.'s 1st Resp., ECF No. 11.)  UHI filed a Reply to the Response on July, 16, 2012.  (UHI's Reply, ECF No. 13.)

    2.    *Herman Gerel's Cross-Claim against UHI* [12]

On June 28, 2012, Herman Gerel filed an Answer to the Complaint and asserted a cross-claim against UHI.  (HG's Answer, ECF No. 10.)[13]  On August 23, 2012, Herman Gerel filed a

---

[12] Herman Gerel also brought a counterclaim against Plaintiff.  We will not address Herman Gerel's counterclaim as it is not the subject of any of the instant Motions to Dismiss.

First Amended Cross-Claim against UHI.  (HG's Am. Cross-Claim, ECF No. 28.)  Herman

Gerel's First Amended Cross-Claim repeated much of the factual allegations found in Plaintiff's

Complaint, however, with some critical additions.

      Herman Gerel claims that it first memorialized the terms of its representation of Fidelity

with respect to the ESI Litigation in a letter dated January 15, 2004.  (*Id.* at ¶ 19.)  After agreeing

to the terms of the representation, ESI asserted its counterclaim against Fidelity, and Plaintiff and

the other Fidelity Stockholders sold the shares of Fidelity to UHI.  (*Id.* at ¶¶ 22-23.)  Herman

Gerel was concerned that the stock purchase presented conflict-of-interest issues, as Herman

Gerel had been adverse to UHI in other previous cases.  (*Id.* at ¶ 23.)  In addition, it was unclear

whether Plaintiff had the authority to bind Fidelity to the retainer.  (*Id.*)  The parties addressed

ESI's counterclaim by agreeing to execute the 2004 Retainer Agreement.  In a letter agreement

dated July 23, 2004, Herman Gerel requested that UHI agree to waive any potential conflicts and

"approve and/or ratify" the 2004 Retainer Agreement.  (*Id*. at ¶ 39; July 23, 2004 Letter, UHI's

3rd Mot. Ex 1, ECF No. 33.)[14]  UHI signed the July 23, 2004 letter and returned a copy to

Herman Gerel on August 4, 2004, thereby agreeing to Herman Gerel's requestes.  (HG's Am.

Cross-Claim ¶ 41.)

      Herman Gerel alleges that on December 31, 2006, Fidelity Insurance was merged with

and into MAMSI Life and Health Insurance Company, a wholly-owned subsidiary of UHI, with

the latter company being the surviving entity.  (*Id*. at ¶ 49.)  Herman Gerel further alleged that

---

     [13] On August 6, 2012, UHI submitted a Motion to Dismiss Herman Gerel's Cross-Claim,
and an accompanying memorandum and exhibits.  (ECF Nos. 19-25.)  Subsequently, Herman
Gerel filed an Amended Cross-Claim, thus rendering UHI's  August 6 motion to dismiss moot.
Upon UHI's request, we dismissed the motion to dismiss.  (ECF No. 40.)
     [14] Herman Gerel failed to attach a copy of the July 23, 2004 letter to either it's cross-
claim or amended cross-claim.  However, UHI attached a copy of the letter to its Motion to
Dismiss Herman Gerel's Cross-Claim.  (July 23, 2004 Letter.)

on March 31, 2007, Fidelity Benefit was merged with and into UHI, with the later company

being the surviving entity.  (*Id.*)  As a result of these mergers, Fidelity ceased to exist, but

Fidelity nonetheless remained the named plaintiff in the ESI Litigation.  (*Id.* at ¶ 53.)  According

to Herman Gerel, on April 16, 2007, UHI entered into a stipulation ("UHI Stipulation").  (*Id.* at

¶ 48.)[15]  In the UHI Stipulation, UHI allegedly admitted that the mergers had occurred and

agreed to pay any judgment entered against Fidelity in favor of ESI with respect to the ESI

counterclaims that was greater than any judgments in favor of Fidelity against ESI.  (HG's Am.

Corss-Claim ¶ 48.)  In addition, the UHI Stipulation was not to affect UHI's right to seek

indemnification as set out in the SPA.  (*Id.* at ¶ 50.)

In Count 1 of its Cross-Claim, Herman Gerel alleges that UHI breached the 2004

Retainer Agreement and 2007 Addendum.  Herman Gerel claims that Plaintiff, acting as

Fidelity's agent, signed the 2004 Retainer Agreement and the 2007 Addendum, and that UHI

approved and ratified the 2004 Retainer Agreement by a signing the July 23, 2004 letter.  (*Id.* at

¶¶ 40, 41,74, 75, 77.)

In Count 3, Herman Gerel asserts a claim for quantum meruit, alleging that in the event

the Court finds no contract between Herman Gerel and UHI, or if UHI did not ratify the 2004

Retainer Agreement, it would be unjust for UHI to benefit from the legal services provided by

Herman Gerel without compensation for those services.  (*Id.* at ¶ 96.)  Similarly, in Count 4,

Herman Gerel claims UHI would be unjustly enriched if permitted to retain the benefit of the

---

[15] Neither party provided the Court with a copy of the UHI Stipulation.  Thus, we will
accept Herman Gerel's recitation of the facts.

legal services provided by Herman Gerel without payment for the value of those services. (*Id.* at ¶ 102.)[16]

On September 17, 2013, UHI filed a Motion to Dismiss Herman Gerel's First Amended Cross-Claim. (UHI's 3rd Mot.) On October 4, 2012, Herman Gerel filed a Response in opposition to UHI's Motion to Dismiss Herman Gerel First Amended Cross-Claim. (HG's Resp.) On October 17, 2012, UHI filed a Reply to Herman Gerel's Response. (UHI's 2nd Reply, ECF No. 39.)

### 3.   *Plaintiff's Cross-Claim against UHI*

Plaintiff filed an Answer to Herman Gerel's Counterclaim, and in addition, asserted a Cross-Claim against Defendant UHI on July 30, 2012. (Pl.'s Cross-Claim, ECF No. 18.) Plaintiff's Cross-Claim does not raise any new factual contentions, but rather incorporates the facts alleged in the earlier filed Complaint. Plaintiff does add an additional count to his Cross-Claim, alleging that UHI is liable to Plaintiff for the attorney's fees and costs claimed by Herman Gerel under a theory of contribution. On August 20, 2012, UHI filed a Motion to Dismiss Plaintiff's Cross-Claim. (UHI's 2nd Mot., ECF No. 26.) On September, 7, 2012, Plaintiff filed a Response in opposition to this Motion. (Pl.'s 2nd Resp., ECF No. 31.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." When evaluating a Rule 12(b)(6) motion, "courts [must] accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v.*

---

[16] Herman Gerel withdraws its claim in Count 2 for attorney's fees and litigation expenses under Georgia state law. (*See* HG's Resp. 13 n.2, ECF No. 36.)

*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  To survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Id.*

The court "must accept all of the complaint's well-pleaded facts as true, and may disregard any legal conclusions."  *Fowler*, 578 F.3d at 210-11.  The court is not required to accept '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Wilson v. City of Phila.*, 415 F. App'x 434, 436 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 663).

Generally, on a motion to dismiss, the court may only consider the pleadings in the complaint.  However, a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III.   DISCUSSION

#### A.   UnitedHealthcare's Motion to Dismiss Plaintiff's Complaint and Cross-Claim

Plaintiff asserts three distinct causes of action in his Complaint and Cross-Claim.[17]  First, in Count 1 of his Complaint, Plaintiff asserts that he is entitled to a judicial determination that UHI released any claim for indemnification from Plaintiff related to the ESI Litigation.  (Compl. ¶¶ 75, 78.)  Next, in Count 3, Plaintiff asserts that UHI should be required to indemnify Plaintiff if he is found liable to Herman Gerel for legal fees and costs.  (*Id.* at ¶ 93.)[18]  Finally, in his Cross-Claim against UHI, Plaintiff contends that to the extent he is personally liable for the fees and costs claimed by Herman Gerel, such debt is a joint obligation shared with UHI, and as a joint obligor, UHI must pay its fair share of the joint debt by way of contribution to Plaintiff. (Pl.'s Cross-Claim ¶¶ 8, 9.)  By contrast, UHI maintains that it did not release its claims for indemnification from Plaintiff, and that under Pennsylvania law Plaintiff cannot maintain a common law indemnification or contribution claim against UHI.

UHI also counters that the SPA places sole responsibility for any legal fees arising out of the ESI Litigation on Plaintiff.  (UHI's 1st Mot. 11-13.)  We will first address UHI's contention regarding its claim that pursuant to the SPA, it can still seek indemnification from Plaintiff for costs and fees related to the ESI Litigation.

---

[17] Plaintiff maintains that UHI is liable to Herman Gerel as the "successor corporation" to Fidelity, for any amount owed, if any, for legal fees and costs arising out of the ESI litigation. (Compl. ¶ 92; Pl.'s Cross-Claim ¶¶ 2, 5.) Plaintiff concludes, without alleging any specific factual information that UHI is the successor-in-interest to Fidelity.  This is a mere legal conclusion, and without more, may be disregarded.

[18] Plaintiff labels Count 3, "Indemnity/Contribution."  However, we note that none of his allegations in Count 3, or the remainder of the allegations in the Complaint, reference contribution.

1.      *Plaintiff's Liability for Legal Fees under the Stock Purchase Agreement*

UHI argues that the unambiguous terms of the SPA dictate that Plaintiff, not UHI, is responsible for the legal fees and costs associated with the ESI Litigation.  (*Id.*)  Plaintiff responds that the Settlement Letter, signed by UHI, released Plaintiff and the other Fidelity Shareholders from their indemnity obligations to UHI arising under the SPA.  The SPA contains two provisions that are critical to this dispute:  (1) the indemnity provision provided in Section 9.02; and (2) the definition of the ESI proceeds provided in Section 1.02(a)(iii).

Before turning to these substantive provisions, we must determine which law governs the dispute between the parties.  The SPA provides that Delaware law governs all questions concerning the construction, validity, and interpretation of the SPA.  (SPA § 11.10.)  "In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state . . . ."  *Nuzzi v. Aupaircare, Inc.*, 341 F. App'x 850, 852 (3d Cir. 2009) (citations omitted).  Pennsylvania law provides that when parties have contracted for a specific body of law, the "[c]hoice of law provisions in [the] contracts will generally be given effect."  *Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989); *Kruzitz* v. *Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).  We will therefore construe the terms of that contract, and the parties respective obligations thereunder, according to Delaware law.[19]

Delaware has adopted the "objective theory" of contracts, "i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."  *Osborne ex. rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citations omitted).  The court must

---

[19] "Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'"  *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).  Accordingly, the choice of law provision in the SPA does not apply to the other contracts at issue, or to the common law claims alleged in the Complaint and Plaintiff's Cross-Claim.

construe contracts as a whole to effectuate the contracting parties' intent. *E.I. du Pont de Memours & Co. v. Shell Oil Co*., 498 A.2d 1108, 1113 (Del. 1985). "Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning." *AT&T Corp. v. Faraday Capital Ltd*., 918 A.2d 1104, 1108 (Del. 2007) (citations omitted). A contract provision is considered ambiguous when it is "reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.* When ambiguity exists as to the meaning and application of contract language, the court must consider extrinsic evidence to arrive at the proper interpretation of the contract. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc*., 702 A.2d 1228, 1232-34 (Del. 1997). "[E]xtrinsic evidence may include overt statements and acts of the parties, the business context, prior dealings between the parties, and business custom and usage in the industry." *United Rentals, Inc. v. RAM Holdings, Inc*., 937 A.2d 810, 834-36 (Del. Ch. 2007) (citations omitted).

In February of 2004, Fidelity and ESI were in the midst of litigation. ESI had filed a counterclaim for Fidelity's failure to pay invoices. At that same time, Plaintiff was negotiating the sale of Fidelity to UHI. The SPA, which memorialized UHI's acquisition of Fidelity, addressed the uncertainties surrounding the ESI Litigation including who would bear the costs of the litigation. In particular, Section 1.02(a), the definition of "ESI proceeds," and Section 9.02, the indemnity provision, speak directly to the expenses resulting from the then pending ESI Litigation.

The indemnity provision provides that the Fidelity Stockholders agreed to:

[I]ndemnify [UHI] . . . and hold them harmless against any claim, loss, liability, deficiency, damages, amount paid in settlement, expense or costs (including reasonable costs of investigation, *defense and legal fees and expenses*) . . . which [UHI] may suffer, sustain or become subject to, as a result of . . . *the litigation with [ESI]*.

(*Id.* at § 9.02; Schedule 9.02(d) (emphasis added).)

Plaintiff does not dispute that this provision required the Fidelity Stockholders to indemnify UHI for any legal fees and expenses resulting from the ESI Litigation.  (Pl.'s 1st Resp. 15.)  Rather, Plaintiff maintains that pursuant to the Settlement Letter, signed by UHI, the Fidelity Stockholders were released from any indemnity obligations arising under the SPA.  (*Id.*)

In July 2011, after Fidelity's claims were rejected by way of summary judgment, ESI agreed to settle the counterclaim against Fidelity for $350,000.  (Settlement Letter.)  In a letter informing UHI of the agreed upon settlement, UHI agreed to "release any and all claims against the Fidelity Shareholders that [UHI] may have under the indemnity provisions of the [SPA] arising from or in any way relating to ESI's counterclaim . . . ."  UHI argues that the release in the Settlement Letter extends only to Fidelity's indemnity obligations as it relates to ESI's counterclaims, and that by contrast, the indemnity provision in the SPA covered losses sustained as result of the ESI Litigation generally.  (UHI's Reply 4.)  While this may be the proper interpretation of the release and the  indemnification provision, it is of no consequence because Herman Gerel claims it is entitled to legal fees and costs stemming from the significant reduction in ESI's *counterclaim*.  (*See* Demand Letter.)  By its plain terms, the release in the Settlement Letter vitiates any indemnity obligations arising under the SPA relating to ESI's counterclaim. Accordingly, the indemnity provision of the SPA does not obligate Plaintiff to indemnify UHI for attorney's fees or costs arising out of the significant reduction in ESI's counterclaim.

Separate and apart from Plaintiff's duty to indemnify, UHI argues that pursuant to Section 1.02(a)(iii), Plaintiff had a direct obligation to fund legal fees and costs of the ESI Litigation.  The SPA provided that any proceeds resulting from the ESI Litigation were to be

distributed to Plaintiff and the remaining Fidelity Stockholders.  (SPA § 1.02(a).)  The ESI

proceeds were defined as follows:

> The ESI Proceeds shall be equal to the proceeds (*it being acknowledged that the Stockholders' or the Stockholders' Representative shall fund all related defense costs and expenses directly, and not out of the Escrow Funds*) recovered by [Fidelity Group] in connection with the pending litigation between [Fidelity Group] and Express Scripts, Inc.

(*Id.* § 1.02(a)(iii) (emphasis added).)

Plaintiff maintains that this provision cannot be interpreted to cover attorney's fees, or the

costs and expenses associated with the third-party claims filed against UHI.  (Pl.'s 1st Resp. 17-

18.)  The terms "defense costs" and "expenses" is not defined in the SPA, and neither party

offers a precise definition of these terms.[20]  The terms "costs" and "expenses" are broad, general

terms, and as such, are fairly susceptible to different interpretations.  We conclude that these

terms are sufficiently ambiguous and we must consider extrinsic evidence in order to arrive at

the parties' reasonable intentions at the time of the contract.

"Words in a contract are interpreted using their common or ordinary meaning, unless the

contract clearly shows that the parties' intent was otherwise."  *Cove on Herring Creek

Homeowners' Ass'n Inc. v. Riggs*, No. 2024-S, 2005 WL 1252399, at *1 (Del. Ch. May 19, 2005)

(quotations omitted).  In looking at established precedent on the definition of the words costs and

expenses, we note that the term costs, according to its usual and ordinary meaning in Delaware,

does not include counsel fees.  *Id.* at *2 ("[T]he term 'costs' is routinely limited to court costs

and certain other expenses necessarily incurred in the litigation process, but excluding legal

fees."); *Comrie v. Enterasys Networks, Inc.*, No. 19254, 2004 WL 5366650, at *4 (Del. Ch. Apr.

---

[20] The SPA provides that all "[c]apitalized terms used in the [SPA] have the meanings ascribed to them in the sections cross-referenced in Article X" of the agreement.  (SPA 1.) While the term "expenses" is defined in Article XI, Section 11.02, this definition does not apply to Section 1.02(a)(iii), as the term expenses is not capitalized in that provision.

27, 2004) *aff'd*, 864 A.2d 929 (Del. 2004) ("[T]he ordinary legal usage of the term 'costs' is limited and would not include attorneys' fees."); *In re Dougherty's Will*, 114 A.2d 661 (Del. Orphans' Ct. 1955) (same).  The SPA is a heavily negotiated contract between sophisticated entities represented by counsel; it is reasonable to assume they understood the accepted limited definition of the term costs.  This assumption is buttressed by the fact that when the parties defined costs in the indemnity provision, they explicitly included the term "legal fees" thus indicating their knowledge that the term costs is limited and does not ordinarily include such fees.  If the parties had intended to hold Plaintiff liable for attorney's fees, they could have explicitly done so in the contract.  Because they chose not to do so, we cannot now broaden the meaning of the terms costs and expenses to include attorney's fees.[21]  Having established that the SPA does not make Plaintiff contractually obligated for attorney's fees related to the ESI Litigation, we will not dismiss Plaintiff's claim for declaratory judgment against UHI, and we turn to Plaintiff's claim that he is entitled to indemnification from UHI.

> ### 2.    *Plaintiff's Claim for Indemnification*

While not alleged in his Complaint, Plaintiff in his Cross-Claim alleged that he was acting as an agent on behalf of UHI.  (Pl.'s Cross-Claim ¶ 6.)  Plaintiff argues that he signed the 2004 Retainer Agreement and the 2007 Addendum as an agent of Fidelity and UHI.  (Pl.'s 1st Resp. 19.)  He contends that, as an agent, he cannot be held personally liable for any contract damages arising out of these agreements.  (*Id.* at 18.)  Rather, his principal, UHI, must be held liable.  (*Id.*)  Plaintiff also asserts that, as an agent of UHI, he has a common law right to indemnification for any contractual debt he incurred while acting on behalf of UHI.  (*Id.* at 20.)

---

[21] We note that Plaintiff's behavior under the SPA is consistent with our interpretation. He funded various expenses and costs of the litigation directly, and not out of the Escrow fund, including the costs of retaining auditing and consulting services used in the course of the ESI litigation.  (Compl. ¶¶ 47-52.)

Plaintiff's theories of liability rest on the existence of a principal-agent relationship between himself, Fidelity, and UHI.[22]

As an initial matter, we must determine which state's law governs the purported agency relationship between the parties.[23] "The relationship between a principal and an agent is determined in general by the law of the state which has the most significant relationship to the parties and the transaction at issue." *See Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil Inc.*, 456 F. Supp. 832, 841 n.17. (D. Del. 1978) (citing Restatement (Second) Conflict of Laws § 291).[24] This suggests that the choice of law is between the following states:  (1) Delaware (where UHI, the purported principal, is incorporated); (2) Pennsylvania (where Plaintiff, the purported agent, worked and resides); or (3) Georgia (the law governing the 2004 Retainer Agreement and 2007 Addendum).

Applying Pennsylvania's choice of law principles, we must determine if there is an actual or real conflict between the potentially applicable bodies of law.  *Hammersmith v. TIG Ins. Co*., 480 F.3d 220, 230 (3d Cir. 2007).  If there are no relevant differences between the laws, then no conflict exists, and a choice of law analysis is unnecessary, *id.,* and we may refer interchangeably to the laws of the states which potentially apply, *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006).

According to Delaware law, an agency relationship is established when "one party consents to have another act on its behalf, with the principal controlling and directing the acts of

---

[22] Even though Plaintiff's theories of liability rest on the existence of an agency relationship, he assumes, without providing any analysis, that he was acting as an agent of both Fidelity and UHI.

[23] Neither party addresses the choice of law issue with respect to agency.

[24] Pennsylvania has adopted the Restatement (Second) of Conflict of Laws ("Restatement") to resolve conflict of law issues.  *See Hull Corp*., 435 F.3d at 463; *Gillan v. Gillan*, 345 A.2d 742, 744 (Pa. Super Ct. 1975).

the agent." *Fisher v. Townsends, Inc.* 695 A.2d 53, 57 (Del. 1997).  Similarly, in Pennsylvania

an agency relationship is established when the principal manifests his intent for the agent to act

on his behalf, the agent accepts the undertaking, and the parties understand the principal is to be

in control of the undertaking.  *Basile v. H & R Block, Inc*., 761 A.2d 1115, 1120 (Pa. Super. Ct.

2000).  In Georgia, an agency relationship arises if "one person, expressly or by implication,

authorizes another to act for him or subsequently ratifies the acts of another in his behalf."

*Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc*., 642 S.E.2d 364, 365 (Ga. Ct. App.

2007).  The principal must have "the right to control the method, manner, and time of the

purported agent's work."  *Id.*   We conclude that the general principles of agency vary little from

jurisdiction to jurisdiction; accordingly, any further choice of law analysis with respect to the

agency is unnecessary.  We now turn to whether Plaintiff has sufficiently alleged that he was

acting as an agent of UHI when he signed the 2004 Retainer Agreement or 2007 Addendum.

i. Agency relationship in 2004 Retainer Agreement

The 2004 Retainer Agreement was entered into between Herman Gerel and Fidelity on

July 21, 2004.  Plaintiff signed the Retainer as Vice-President of Fidelity, and consented on

behalf of himself and as the Fidelity Stockholders' Representative.  At the time that Plaintiff

executed the 2004 Retainer Agreement, Fidelity was operating as a wholly-owned subsidiary of

UHI.  (Retainer Agreement ¶ 2(B).)  The first agency inquiry then, is whether or not Plaintiff, as

Vice-President of Fidelity, was acting as an agent of Fidelity, and whether UHI can be liable for

fees and costs under the 2004 Retainer Agreement entered into by Fidelity, its wholly owned

subsidiary.

As Vice-President of Fidelity, Plaintiff was clearly acting as an agent on behalf of

Fidelity when signing the 2004 Retainer Agreement.  *See Hamilton Partners, L.P. v. Englard*, 11

21

A.3d 1180, 1215 (Del. Ch. 2010) ("A corporation is an artificial being created by law . . . Being artificial and the mere creature of the law, it can only act by its officers and agents.") (citations omitted); *Lokay v. Lehigh Valley Co-op. Farmers, Inc.*, 492 A.2d 405, 408 (Pa. Super. Ct. 1985) ("A corporation is a creature of legal fiction, and must 'act' through its officers, directors or other agents."); *Alexander v. Hulsey Envtl. Servs., Inc.*, 702 S.E.2d 435, 438 (Ga. Ct. App. 2010) ("A corporation is an artificial person and can only act through its directors, officers, agents, and servants.").  However, Plaintiff is attempting to hold UHI, not Fidelity, liable here.  Therefore, we must address whether UHI, as the parent corporation of Fidelity, has obligations as a principal under the 2004 Retainer Agreement.  Ordinarily, a parent corporation will not be held liable for the contractual obligations of its subsidiary, even if or simply because the parent wholly owns the subsidiary.  *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 643-44 (E.D. Pa. 2011); *Ashland Oil, Inc.*, 456 F. Supp. at 838; *EnduraCare Therapy Mgmt., Inc. v. Drake*, 681 S.E.2d 168, 173 (Ga. Ct. App. 2009).

The issue of liability depends on the establishment of an agency relationship between the subsidiary and the parent corporation, and specifically the extent to which the parent controls the actions of the subsidiary.  *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988); *Mabon, Nugent & Co. v. Tex. Amer. Energy Corp.*, 1988 WL 5492, at *4 (Del. Ch. Jan. 27, 1988); *see Broughal v. First Wachovia Corp.*, 14 Pa. D. & C. 4th 525, 529 (Pa. Com. Pl. 1992) (holding that if the plaintiff could establish an agency relationship between a parent corporation and its subsidiary, then the parent may be liable for any injuries sustained by the plaintiff); *Kissun v. Humana, Inc.*, 479 S.E.2d 751, 754 (Ga. 1997) (holding that where the evidence can establish an actual or apparent agency relationship between a subsidiary and its parent, the parent may be liable for the actions of its subsidiary).  There must be a strong

showing of control by the parent to find that it was a principal to its subsidiary. *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, No. 83C-98, 1988 WL 32012, at *4 (Del. Super. Ct. Mar. 30, 1988). "The parent will be liable for its subsidiary's activities only if the parent dominates those activities. The control must be actual, participatory and total." *Id.* (internal citations omitted).

With respect to the ESI Litigation, it is clear that UHI had little to no control over Fidelity's handling of the ESI Litigation. The SPA explicitly provided that Plaintiff had the authority "to contest, concede, settle, or compromise any claim relating to [Fidelity Group's] pending litigation with ESI (including any related claims or counterclaims) *without the consent of [UHI]* . . . ." (SPA § 1.08 Ex. D (emphasis added).) Only in the limited circumstances enumerated in Section 1.08 would UHI be entitled to make decisions regarding the ESI litigation, and, even then, Section 1.08 provides that UHI would merely be able to jointly participate in decisions with Plaintiff, not Fidelity. Thus, no provision of the SPA provides that UHI had the ability to control Fidelity's handling of the ESI litigation. In addition, the 2004 Retainer Agreement assigned all of the benefits and risks of the ESI Litigation squarely upon Plaintiff and the Fidelity Stockholders. The agreement provided that "[a]s part of UHI's acquisition of Fidelity, the Fidelity shareholders retained all interest in the Claims and agree to indemnify UHI for any liability relating to issues alleged in the Counterclaims. Accordingly, *UHI has no direct financial interest in the outcome of the Lawsuit.*" (2004 Retainer Agreement ¶ 2(B) (emphasis added).) Plaintiff has failed to allege facts from which we can infer that UHI controlled Fidelity such that an agency relationship existed between the two entities. Plaintiff's theory that he was acting as an agent of UHI when he signed the 2004 Retainer Agreement on Fidelity's behalf fails. In addition, Plaintiff was not acting as a direct agent of UHI.

Plaintiff seems to also ambiguously allege that he is entitled to common law indemnification from UHI because he was acting as a direct agent of UHI when he signed the 2004 Retainer Agreement.  In support of this agency theory, Plaintiff states that when he signed the 2004 Retainer Agreement, he was an employee of UHI.  (Pl.'s Am. Cross-Claim ¶ 3.)  However, "[m]erely because a party is an agent for some purposes does not mean that the party is an agent for all purposes."  *Field v. Omaha Standard, Inc.*, 582 F. Supp. 323, 327 (E.D. Pa. 1983) (citing *Mellon Nat. Bank & Trust Co. v. Esler*, 55 A.2d 327 (1947)).  Plaintiff does not allege any other facts to support that he was acting as an agent of UHI with respect to the 2004 Retainer Agreement.  He does not claim that in signing the 2004 Retainer Agreement he was acting within the scope of his employment with UHI, and we cannot reasonably infer that fact because the 2004 Retainer Agreement states Plaintiff was signing on behalf of Fidelity, as Vice President—not on behalf of UHI as an employee or agent.  In addition, Plaintiff states that "[a]t all times relevant to the formation of the [2004 Retainer Agreement], Plaintiff acted solely on behalf of and as Vice President of Fidelity.  (Compl. ¶ 30.)  Essentially, Plaintiff has not pled any facts that plausibly support the assertion that UHI had consented to Plaintiff acting for it with regard to the 2004 Retainer Agreement, nor any facts that would lead to the inference that UHI controlled and directed Plaintiff's actions.  Consequently, Plaintiff has not sufficiently alleged that he was acting as a direct agent of UHI in signing the 2004 Retainer Agreement.  To the extent that Plaintiff is found personally liable under the 2004 Retainer Agreement, Plaintiff is not entitled to common-law indemnification from UHI based on an agency relationship with UHI.

ii.   Agency relationship in 2007 Addendum

Next, we must analyze whether Plaintiff has sufficiently alleged that he was acting as an agent of UHI when he signed the 2007 Addendum.  In April 2007, ESI asserted third party

claims against UHI.  In the 2007 Addendum to the 2004 Retainer Agreement, Herman Gerel

agreed to expand the scope of its representation to include these third party claims.  Again,

Herman Gerel and Fidelity were the only signatories to the 2007 Addendum.  However, Fidelity

was no longer operating as a wholly owned subsidiary of UHI at this time.  Although Plaintiff

does not include these facts in his pleadings, Herman Gerel, in its Cross-Claim against UHI,

explained that by the time the 2007 Addendum was signed, Fidelity had merged into UHI and

another one of UHI's wholly-owned subsidiaries.  Thus, the parent-subsidiary agency analysis

does not apply here.

Instead, we must determine whether Plaintiff was acting as an actual agent of UHI when

he signed the 2007 Addendum.  The 2007 Addendum expressly stated that Section 9.04 of the

SPA authorized the Fidelity Stockholders to retain legal counsel to contest and defend third-party

claims.  (2007 Addendum.)  Pursuant to that authority, Plaintiff, as the Fidelity Stockholders'

Representative, retained the services of Herman Gerel to contest and defend the third-party

claims asserted against UHI.  (*Id.*)  The parties agreed that Herman Gerel would provide merely

a "pro forma" defense to the third-party claims without any adjustment to the fee schedule

agreed upon in the 2004 Retainer Agreement.  Herman Gerel agreed to file an answer to the

third-party complaint and prepare any related correspondence and communication with opposing

counsel.  (*Id.* at ¶ 1.)  In fact, Herman Gerel anticipated that "there will be very little for [it] to do

except provide a pro forma defense."  (*Id.* at ¶ 2.)  Plaintiff signed the 2007 Addendum on behalf

of Fidelity as "Former CEO by Authorization from [UHI]," and as consenting on behalf of

himself and the Fidelity Stockholders.  (*Id.*)  Plaintiff claims he was acting "with the full

knowledge and authority of [UHI]."  (Pl.'s Cross-Claim ¶ 4.)  Again, agency requires a showing

that "one party consents to have another act on its behalf, with the principal controlling and

directing the acts of the agent." *Fisher*, 695 A.2d 53, 57 (Del. 1997).  Here, Plaintiff has pled

that he was acting on behalf of UHI and that UHI consented to Plaintiff acting on its behalf.

However, Plaintiff has not pled any facts that suggest that UHI was controlling and directing

Plaintiff's actions—a crucial element necessary to establish an agency relationship.  *Smalich v.

Westfall*, 269 A.2d 476, 480-81 (Pa. 1970) (citations omitted) ("[A]gency results only if there is

an agreement for the creation of a fiduciary relationship with control by the beneficiary. The

right of control by the principal may be exercised by prescribing what the agent shall or shall not

do before the agent acts, or at the time when he acts, or at both times.").

Plaintiff admits that the Shareholders, and thus Plaintiff, retained full control over the ESI

Litigation, with authority to "contest, concede, settle or compromise the Express Scripts third-

party claims against [UHI] and counterclaims against Fidelity."  (Pl.'s 2nd Resp. 17.)  Even

though the SPA provides that under certain circumstances, UHI will jointly participate with

Plaintiff in decisions regarding the ESI Litigation, no facts indicate UHI had the ability to control

Plaintiff's actions.  Section 1.08 of the SPA indicates that if a claim seeks relief other than

money damages, if a claim relates to the business of Fidelity in such a way that it could

adversely affect Fidelity's business or reputation, or if UHI would not be fully indemnified for a

claim, then UHI will jointly participate in all decisions related to such a claim with Plaintiff.

Based on this section of the SPA, it appears that UHI did have the right to participate in the ESI

Litigation with Plaintiff under certain circumstances.  Still, this section does not provide that

UHI had the right or ability to control Plaintiff's actions related to the ESI Litigation.  We cannot

infer that "joint participation" means control.  Because Plaintiff failed to allege that UHI

controlled his actions with regard to the ESI Litigation covered in the 2007 Addendum, Plaintiff

failed to properly plead that he was acting as an agent of UHI.  Accordingly, we must dismiss Plaintiff's claim that he is entitled to common law indemnification from UHI.

Even if one were to conclude that Plaintiff sufficiently pled an agency relationship, his claim for indemnification would still fail.  Plaintiff rests his entire claim of indemnification on § 439 of the Restatement of Agency (Second) that states:

> Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for:
> . . .
>> (b) payments upon contracts upon which the agent is authorized to make himself liable, and upon obligations arising from the possession or ownership of things which he is authorized to hold on account of the principal;
>>
>> (c) payments of damages to third persons which he is required to make on account of the authorized performance of an act which constitutes a tort or a breach of contract;

Restatement (Second) of Agency § 439 (1958).  A handful of cases in this circuit, all of which are more than 25 years old, do cite to this section or similar sections.  *See Hornstein v. Kramer Bros. Freight Lines, Inc.*, 133 F.2d 143, 146 n.7 (3d Cir. 1943); *DeLoach v. Companhia de Navegacao Lloyd Brasileiro*, No. 84-947, 1986 WL 15015, at *1 (E.D. Pa. Dec. 31, 1986); *Fillippo v. S. Bonaccurso & Sons, Inc.*, 466 F. Supp. 1008, 1022-23 (E.D. Pa. 1978); *Baut v. Pethick Constr. Co.*, 262 F. Supp. 350, 360 n.4 (M.D. Pa. 1966).  Yet, none of the cases specifically adopt Section 439 or claim that Section 439 has been explicitly adopted in Pennsylvania.  Indeed, more recently in 2000, the Pennsylvania Superior Court specifically refused to adopt Section 439.  *See Willard v. Interpool, Ltd.*, 758 A.2d 684, 686-87 (Pa. Super. Ct. 2000) ("[S]ince our Supreme Court has yet to adopt [sections 438 and 439], and since our legislature has not seen fit to enact these sections into law, we decline to adopt them as well.").  *Willard* is the most recent expression of the law in Pennsylvania on this issue.  Therefore,

Plaintiff's indemnification claim fails to the extent it relies on Section 439.[25]  Because Plaintiff rests his entire claim for common law indemnification on Section 439 and presents no other authority that suggests that even with an agency relationship a valid indemnification claim exists, the claim would not survive.

### 3.       Plaintiff's Claim for Contribution [26]

Finally, Plaintiff alleges that to the extent he is personally liable for the fees and costs claimed by Herman Gerel, such debt is a joint obligation shared with UHI, and as a joint obligor, UHI must pay its fair share of the joint debt by way of contribution to Plaintiff.  It is well established that a party is not entitled to contribution on a joint obligation until he has actually paid the debt.  *See Resolution Trust Corp. v. Gross*, No. 93-5056, 1996 WL 89380, *2 (E.D. Pa. Feb. 22, 1996) ("[N]o right to contribution in favor of a joint debtor exists until actual payment by him of more than the share of the whole debt which, as between himself and those from whom he seeks contribution, he ought to pay." (quoting 2 Williston on Contracts § 345 at 772 (3d ed. 1959)).  Plaintiff has failed to meet a condition precedent to the accrual of his claim for contribution as he has yet to pay any amount of the alleged debt to Herman Gerel.  Moreover, Pennsylvania does not recognize a right of contribution among defendants in breach of contract cases.  *E. Elec. Corp. of N.J. v. Rumsey Elec. Co*., No. 08-5478, 2010 WL 1444584, *2 (E.D. Pa. Apr. 8, 2010); *Castle Cheese, Inc. v. MS Produce, Inc*., No. 04-878, 2008 WL 4372856, at *42 (W.D. Pa. Sept. 19, 2008); *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp*., 552 F. Supp. 2d 515, 520 (E.D. Pa. 2008); *Pride Mobility Prods. Corp. v. Dewert Motorized Sys*., No. 05-807, 2006

[25] The parties do not take a position on what state law applies to the indemnification claim.  They provide no reliable legal authority indicating that Section 439 has been adopted in Georgia or Delaware.  Our independent research has revealed none.

[26] The parties each cite Pennsylvania law with respect to contribution, and thus implicitly agree that Pennsylvania law applies to Plaintiff's contribution claim.

WL 1997440, at *5 (M.D. Pa. July 17, 2006); *Unique Techs., Inc. v. Micro-Stamping Corp.*, No. 02-6649, 2003 WL 21652284, at *3 (E.D. Pa. Apr. 15, 2003); *Kemper Nat'l P & C Cos. v. Smith*, 615 A.2d 372, 379-80 (Pa. Super. Ct. 1992).  The cases that Plaintiff cites to support a claim for contribution here all rest on the theory that "joint obligors" who are both liable for the same debt have a right of contribution from each other when one pays the debt on behalf of the other.  (Pl.'s 1st Resp. 29-31; Pl.'s 2nd Resp. 18-20.)  Those cases involved situations where the "joint obligors" were each a party to a promissory note or guaranty and thus were liable for the debt. *Goldberg v. Altman*, 154 A.2d 279, 282 (Pa. Super. Ct. 1959) (finding contribution available when four individuals each signed a note guarantying the same security deposit); *In re Pacileo*, 87 B.R. 380, 384 (Bankr. W.D. Pa. 1988) (applying *Goldberg* to find that payments by a husband on a mortgage held jointly with his wife created a right of contribution).  That is not the case here, where UHI was not a signatory to the contracts at issue and did not expressly take on shared liability for a debt with Plaintiff.  In any event, because Plaintiff has not yet paid any debt for which he can claim contribution, Plaintiff's claim for contribution from UHI must be dismissed.

> **B.     UnitedHealthcare's Motion to Dismiss Herman Gerel's First Amended Cross-Claim**

Herman Gerel makes the following allegations in its Cross-Claim against UHI:  (1) Breach of Contract (Count 1); (2) Quantum Meruit (Count 3); and (3) Unjust Enrichment (Count 4).[27]

---

[27] Herman Gerel dismissed Count 2, its claim under Georgia law for legal fees and expenses.

1.    *Herman Gerel's Claim for Breach of Contract*[28]

Herman Gerel alleges two distinct theories with respect to its breach of contract claim.

First, it claims that Plaintiff signed the 2004 Retainer Agreement as an agent of Fidelity and

UHI, and that UHI ratified the agreement through the July 23, 2004 conflicts waiver letter.

Separate and apart from the ratification, Herman Gerel claims that Plaintiff signed the 2007

Addendum as UHI's agent and UHI is liable for the attorney's fees and costs as the successor

corporation to Fidelity by merger.  We address each of these contentions in turn.

i.    Ratification

As previously discussed *infra*, Section III.A.2, Fidelity was not acting as an agent of UHI

at the time it entered into the 2004 Retainer Agreement with Herman Gerel.

However, under either Pennsylvania or Georgia law, "a 'purported' principal can ratify

and bind himself on acts done by another person not his agent and having no authority to act for

him." *DeSilvio v. Restauire*, 400 A.2d 211, 213 (Pa. Super. Ct. 1979); *Ellis v. Fuller*, 638 S.E.2d

433, 436 (Ga. Ct. App. 2006) (quotation omitted) ("Ratification may be made as to either the act

of an agent in excess of his or her authority or the act of one who purports to be an agent but is

really not.").  "Ratification occurs when a principal 'knows of the agent's unauthorized act and,

with full knowledge of all the material facts, accepts and retains the benefits of the unauthorized

act.'"  *Ellis*, 638 S.E.2d at 436 (quoting *Bresnahan v. Lighthouse Mission, Inc.*, 496 S.E.2d 351

(Ga. Ct. App. 1998)); *Schwarz v. Mahoning Valley Country Club*, 114 A.2d 78, 80 (Pa. 1955).

"'[S]uch ratification relates back and supplies original authority to execute the contract.'"  *CNA*

---

[28] The parties both cite Georgia and Pennsylvania law with respect to the breach of
contract claim.  Neither party perceives a conflict between the two jurisdictions.  (UHI Mot. 13
n.3; HG's Resp. 14 n.3.)  Since there is no dispute between the parties regarding the choice of
law, we will not engage in a choice-of-law analysis with respect to this issue and will assume
that these laws are not in conflict.  *See USA Mach. Corp. v. CSC, Ltd*., 184 F.3d 257, 263 (3d
Cir. 1999) (assuming without deciding that Pennsylvania law governed diversity suit where
parties agreed on choice of law).

*Ins. Grp. v. Nationwide Mut. Ins. Co*., No. 98-1962, 2000 WL 288241, at *4 (E.D. Pa. Mar. 8,

2000) (quotations omitted).  For a purported principal to be held liable on the theory of

ratification, "the act to be ratified must have been done at its inception on behalf of the

principal."  *McRoberts v. Phelps*, 138 A.2d 439, 446 (Pa. 1958) (citing *Edwards v. Heralds of*

*Liberty*, 107 A. 324, 326; Restatement (Second), Law of Agency, § 85; 2 Am. Jur. Agency, §

222; Mecham on Agency, § 386 *et seq.*); *see Bailis v. Reconstruction Fin. Corp.*, 128 F.2d 857,

860 (3d Cir. 1942); *Lemmons v. City of Decatur*, 112 S.E.2d 597, 598 (Ga. 1960) ("An act can

not be subject to ratification unless done in behalf of the person adopting it and attempting to

ratify it.").

UHI argues that ratification is inapplicable here because the action to be ratified, the

signing of the 2004 Retainer Agreement, was not done at its inception on behalf of the principal.

(UHI's 3rd Mot. 16.)  We agree.  "Since the effect of ratification is to confirm an act done, it is

indispensable that the act ratified must have been done by the assumed agent as agent and in

behalf of a principal. . . . The contract to be ratified must purport to have been made on account

of the alleged principal, so that when ratified, it shall be capable of being enforced by and against

the principal as a contract to which he was a party."  *Edwards*, 107 A. at 326; *see also Ellis*, 638

S.E.2d at 435-36 (citing *Kingsberry Homes v. Findley*, 249 S.E.2d 51, 54 (Ga. 1978)) ("[i]f at the

time of the [contract], the seller knows, not only the person who is nominally dealing with him is

not principal but agent, and also knows who the principal really is, and, notwithstanding all the

knowledge, chooses to make the agent his debtor, dealing with him and him alone, the seller

must be taken to have abandoned his recourse against the principal, and cannot afterwards, upon

failure of the agent, turn round and charge the principal, having once made his election at the

time when he had the power of choosing between the one and the other.").

31

In this case, given the facts pled by Herman Gerel, it is plausible that Plaintiff held himself out as acting on behalf of UHI leading up to the signing of the 2004 Retainer Agreement. Even so, that does not establish that UHI ratified the 2004 Retainer Agreement in the July 23, 2004 letter because Herman Gerel still must allege that the 2004 Retainer Agreement was purported to have been made on UHI's behalf such that it could be enforced against UHI, as party to the contract. Herman Gerel has not made such allegations. The 2004 Retainer Agreement does not mention UHI as a party to the contract or attempt to impose any obligation on UHI. The actual language of the 2004 Retainer shows that Plaintiff did not actually contract on behalf of UHI—authorized or unauthorized—when he signed the agreement. Therefore, UHI was never actually a purported party to the 2004 Retainer Agreement. UHI could not have ratified the 2004 Retainer Agreement even if it had desired to do so because the underlying contract could not be enforced against UHI, as it did not obligate UHI to take any action. Because UHI could not have ratified the 2004 Retainer Agreement, we will dismiss Herman Gerel's breach of contract claim to the extent it is relies on a theory of ratification.

ii.    <u>Successor liability</u>

"It is well established law in [Pennsylvania] that when corporations merge the surviving corporation succeeds to both the rights and liabilities of the constituent corporation." *LTV Steel Co., Inc. v. W.C.A.B. (Mozena)*, 754 A.2d 666, 677 (Pa. 2000); *see also Ward v. City of Cairo*, 583 S.E.2d 821, 824 (Ga. 2003) (quotations omitted) (noting there is a general rule that "the successor corporation succeeds to the rights and privileges of the constituents unless some rule of law provides otherwise"). "When a corporate entity merges with another entity, the consolidated corporation succeeds to the contractual right and other rights of action of the constituent entities." *Schmidt, Long & Assocs., Inc. v. Aetna U.S. Healthcare, Inc.*, No. 00-3683,

2001 WL 856946, at *7 n.11 (E.D. Pa. July 26, 2001) (citing 15 Pa. Con. Stat. Ann. § 1929(b));
*Bomani v. All Persons Known or Unknown Who Claim or Might Claim Adversely to Plaintiffs Title to Real Prop. Known as 7217 Lake Crossing, Stone Mountain*, No. 12-2637, 2013 WL 5423435, at *3 (N.D. Ga. Sept. 26, 2013) ("The corporation that survives a merger is entitled to step into the shoes of its predecessor to enforce that party's contractual rights.").

UHI argues that Herman Gerel's "successor liability" theory must fail because UHI's interest in the ESI Litigation was expressly disclaimed in the 2004 Retainer Agreement and the 2007 Addendum.  UHI's argument does not contain any citation to legal authority, let alone legal authority to support the proposition that a corporation can disclaim successor liability by contract.  Herman Gerel alleges that UHI stipulated that "on December 31, 2006, Fidelity Insurance Company was merged with and into MAMSI Life and Health Insurance Company, a wholly owned subsidiary of UHI, with the later company being the surviving entity, and that on March 31, 2007, Fidelity Benefit Administrators, Inc. was merged with and into UHI with the later company being the surviving entity."  (HG's Am. Cross-Claim ¶¶ 49, 52.)  Herman Gerel has successfully alleged that UHI and Fidelity merged, and that Fidelity was dissolved as a result of the mergers.  UHI has not provided a persuasive argument as to why successor liability would not apply in this instance.  At this juncture, it is plausible on its face that UHI could be legally responsible for the liabilities and debts of Fidelity on the theory of successor liability.  *Ieropoli v. AC&S Corp.*, 842 A.2d 919, 932 (Pa. 2004) (stating a "corporation that absorbs another corporation in a merger becomes legally responsible in every sense of the word for the latter's liabilities and debts").  Accordingly, we will not dismiss Herman Gerel's breach of contract claim against UHI.

2.    *Herman Gerel's Claim for Unjust Enrichment*

In the event that Herman Gerel is unable to recover against Plaintiff or UHI on other grounds, it alternatively seeks to recover against UHI on the theories of unjust enrichment or quantum meruit.  Unjust enrichment is an equitable doctrine that has the same elements in Pennsylvania and Georgia:  "(1) the plaintiff conferred benefits upon the defendant; (2) the defendant realized those benefits; and (3) the defendant accepted and retained the benefits under circumstances in which it would be inequitable for it to retain them without payment of value."[29] *Bunnion v. Consol. Rail Corp.*, 108 F. Supp. 2d 403, 427 (E.D. Pa. 1999); *see Chem-Nuclear Sys., Inc. v. Arivec Chem., Inc.*, 978 F. Supp. 1105, 1110 (N.D. Ga. 1997).  "In order to recover, there must be *both* (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied."  *Global Ground Support, LLC v. Glazer Enters., Inc.*, 581 F. Supp. 2d 669, 676 (E.D. Pa. 2008) (emphasis in original) (quotations omitted).  "[T]he plaintiff bears the burden of establishing either that the defendant wrongfully secured the benefit or passively received a benefit that it would be unconscionable to retain."  *Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137 (Pa. Commw. Ct. 2005).

Here, UHI first argues that Herman Gerel's unjust enrichment claim must be dismissed because Herman Gerel has not alleged that UHI received any benefit from Herman Gerel's services.  "Benefit" in this context means any form of advantage.  *Zvonik v. Zvonik*, 435 A.2d 1236, 1241 (Pa. Super. Ct. 1981) (citing Restatement (First) of Restitution § 1, cmt. B (1937)); *Jones v. White*, 717 S.E.2d 322, 328 (Ga. Ct. App. 2011) (citing Restatement (First) of

---

[29] UHI cites to both Pennsylvania and Georgia law in making its arguments regarding unjust enrichment, contending the laws of both states are the same.  (UHI's 3rd Mot. 22.) Plaintiff makes no argument as to what law applies but cites to Pennsylvania law in addressing UHI's argument.  (HG's Resp. 19-20.)  Again, because the parties do not dispute the choice of law, we will not engage in a choice-of-law analysis on this issue and will assume that these laws are not in conflict.  *See USA Mach. Corp.*, 184 F.3d at 263.

Restitution § 1, cmt. b).  Herman Gerel claims that it has sufficiently alleged that UHI received a benefit.  Herman Gerel specifically states that under the UHI Stipulation, UHI agreed to pay any amounts Fidelity owed to ESI as a result of the ESI Litigation.  (HG's Am. Cross-Claim ¶ 48.)  Herman Gerel further alleges that because of the legal services it provided to Fidelity, the amount Fidelity owed to ESI was greatly reduced from $2,867,064.41 to $350,000.  (*Id.* at ¶¶ 54, 62.)  Thus, Herman Gerel claims that UHI benefited from its services by reducing Fidelity's, and thereby UHI's, obligation to ESI.  These allegations sufficiently establish that UHI received a benefit from Herman Gerel's services.

UHI next argues that even if it received a benefit from Herman Gerel's services, it would not be unjust for UHI to retain such benefit without compensating Herman Gerel.  "[T]he mere fact that one party benefits from the act of another is not of itself sufficient to justify restitution.  There must also be an unconscionable injustice in permitting the benefit to be retained without compensation."  *Global Ground Support, LLC*, 581 F. Supp. 2d at 676 (citations omitted).  UHI claims that no injustice exists here because it was simply a third-party that benefited from contracts between Fidelity and Herman Gerel, and that the alleged failure of Fidelity to perform under the contracts by paying Herman Gerel does not give rise to a right of restitution against UHI.  UHI cites *Global Ground Support, LLC*, 581 F. Supp. 2d at 676, in support of its argument.  That case discussed situations in which a contract between two parties provides, among other things, that a third party shall receive a certain benefit and, then after the third party receives the benefit, the promisor fails to uphold its part of the contract.  As a result, the promisee, who conferred the benefit on the third party, wants payment for the benefit from the third party, so the promisee sues the third-party for payment.  *Id.*  The court in *Global Ground Support*, citing the Restatement (First) of Restitution § 110, held that it was not unjust for the

35

thirdparty beneficiary to retain the benefit without payment, unless the third party somehow misled the promisee. *Id.*; *see Alpha Pro Tech, Inc. v. VWR Int'l LLC*, No. 12-1615, 2013 WL 6179065, at *17 (E.D. Pa. Nov. 26, 2013). Essentially, "the mere failure of performance by one contracting party does not give rise to a right of restitution against the third party." *Global Ground Support, LLC*, 581 F. Supp. 2d at 676; *Meehan v. Cheltenham Twp.*, 189 A.2d 593, 596 (Pa. 1963).

Here, Fidelity and Herman Gerel entered into two contracts, the 2004 Retainer Agreement and the 2007 Addendum, whereby Fidelity agreed to pay Herman Gerel for legal services on a contingency fee basis. UHI was not a party to the contracts. In accordance with the contracts, Herman Gerel provided legal services to Fidelity, some of which benefited UHI, as discussed above. Now, Herman Gerel claims that it is entitled to payment from Fidelity under the contracts. Herman Gerel has sought payment from Fidelity, and Fidelity has since refused to pay. Consequently, Herman Gerel seeks payment from UHI for the services that it received as a third-party beneficiary to the contracts on the theory of unjust enrichment. This situation falls squarely in line with the circumstances discussed in *Global Ground Support*: UHI is a third-party beneficiary of contracts between Fidelity and UHI, and Fidelity has allegedly refused to perform its duties under the contracts. UHI can justly retain the benefit conferred upon it by Herman Gerel without payment, unless Herman Gerel can allege that UHI mislead it. Herman Gerel has not made any such allegation. Accordingly, Herman Gerel has not sufficiently alleged that UHI was unjustly enriched by the benefit it received from Herman Gerel.

### 3. *Herman Gerel's Claim for Quantum Meruit*

Quantum meruit is also an equitable doctrine. In fact, it is a form of unjust enrichment that is used when "one party had a reasonable expectation of payment from the other party, and it

would be unconscionable . . . for the second party to receive the benefit of the first party's services without payment." *Am. Society for Testing & Materials v. Corrpro Cos., Inc.*, 292 F. Supp. 2d 713, 718 (E.D. Pa. 2003).  The party seeking payment must show that it reasonably expected payment for its services at the time the services were rendered.  *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 116 F. Supp. 2d 610, 623 (W.D. Pa. 1999); *Amend v. 485 Props.*, 627 S.E.2d 565, 567 (Ga. 2006); *see also Aloe Coal Co. v. Dept. of Transp.*, 643 A.2d 757, 768 (Pa. Commw. Ct. 1994) (finding the plaintiff did not have a reasonable expectation of payment when the defendant did not expressly indicate it would pay and the defendant informed plaintiff that it did not have the funds to pay for the services performed).  Herman Gerel has not alleged any facts from which we can infer that it reasonably anticipated payment from UHI at the time that it provided legal services that benefited UHI.  As such, Herman Gerel's claim against UHI for quantum meruit fails.[30]

## IV.     CONCLUSION

For the foregoing reasons, UHI's Motions to Dismiss Plaintiff's Complaint and Cross-Claim are granted in part and denied in part.  In addition, UHI's Motion to Dismiss Herman Gerel's Cross-Claim is granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:


*/s/ R. BARCLAY SURRICK, J.*

---

[30] Because Herman Gerel has failed to state claims for unjust enrichment or quantum meruit, we need not determine whether Herman Gerel is entitled to recover under the 2004 Retainer Agreement or 2007 Addendum at this time.