IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. KNOX | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-2238 |
| HERMAN GEREL, LLP, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                          **JANUARY  7 , 2016**

Presently before the Court is Plaintiff Thomas J. Knox's Motion for Partial Judgment on

the Pleadings.  (Pl.'s Mot., ECF No. 46.)  Plaintiff seeks declaratory judgment on Count I of his

Complaint.  (*Id.* at 1.)  Plaintiff also requests that the Court dismiss Counts I-IV of Defendant

Herman Gerel's Counterclaims as moot.  (*Id.*)  For the following reasons, Plaintiff's Motion will

be granted.

**I.      BACKGROUND**

Plaintiff Thomas J. Knox is a citizen of Pennsylvania, and was formerly a majority

shareholder of Fidelity Insurance Co. and Fidelity Benefit Administrators, Inc., with 80.39% of

the shares.  (Compl. ¶¶ 1, 12, 29, ECF No. 1.)  Defendant Herman Gerel, LLP ("Herman

Gerel"),[1] is a law firm and limited liability partnership with its principal place of business in

Georgia.  (*Id.* at ¶ 2.)  Defendant UnitedHealthcare, Inc. ("UHC") is a Delaware corporation with

its principal place of business in Edina, Minnesota.  (*Id.* at ¶ 3.)  UHC acquired Fidelity in March

2004.  (*Id.* at ¶ 8.)

---

[1] Herman Gerel was formerly known as Herman, Mathis, Casey, Kitchens & Gerel, LLP. (Compl. ¶ 2.)  We refer to Defendant as Herman Gerel.

This lawsuit arises out of a dispute over Plaintiff's alleged obligation to pay Herman Gerel fees and costs in connection with legal services provided by Herman Gerel for claims filed for and against Fidelity Insurance Co. ("Fidelity Insurance") and Fidelity Benefit Administrator's, Inc. ("Fidelity Benefit"), (collectively "Fidelity").  (Compl. ¶ 9.)

A.    **Factual Background**[2]

1.    *2004 Retainer Agreement*

In 2003, Herman Gerel and more than a dozen law firms entered into an agreement to represent clients in litigation against pharmacy benefit managers ("PBMs").  (Herman Gerel Countercl. ¶ 4, ECF No. 10.)  In early 2004, Herman Gerel entered into an agreement to represent Fidelity in the matter of *Fidelity Insurance Co. v. Express Scripts, Inc.*, No. 03-1521 (E.D. Mo.) (hereinafter "the ESI Litigation")—a lawsuit filed by Fidelity against Express Scripts, Inc. ("ESI"), a Missouri based PBM.  (*Id.*; Compl. ¶¶ 12, 16.)[3]  On February 26, 2004, in the ESI litigation, ESI filed counterclaims against Fidelity alleging that Fidelity had failed to make payments on invoices billed by ESI.  (Compl. ¶ 18.)  ESI demanded $1.5 million, plus interest in its counterclaims.  (*See* Settlement Letter, Compl. Ex. I.)  On July 21, 2004, following the filing of the ESI counterclaims, Herman Gerel and Fidelity re-negotiated the terms of their agreement.  (Compl. ¶ 22 (citing July 21, 2004 Retainer Agreement ¶ 4 ("Retainer Agreement"), Compl. Ex. C).)  The re-negotiated agreement provided for a sliding contingency fee scale of 28% to 33% and reasonable out-of-pocket costs, which were both dependent upon the "amount recovered" on behalf of Fidelity.  (Retainer Agreement ¶¶ 4, 5.)

_____

[2] We view all of the facts and draw all reasonable inferences therefrom in the light most favorable to Defendant Herman Gerel, the non-moving party.  *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012)

[3] ESI served as Fidelity Insurance's pharmacy benefit manager.  (Compl. ¶ 14.)  Fidelity alleged that ESI improperly retained millions of dollars for its own use and benefit.  (*Id.*)

Paragraph 1 of the 2004 Retainer Agreement defined the scope of Herman Gerel's representation of Fidelity as follows:

> 1. REPRESENTATION . . . The Lawsuit involves both (1) affirmative claims asserted by Fidelity against [ESI], Fidelity's former pharmacy benefits manager or PBM ("PBM") (the Claims); and (2) counterclaims asserted by ESI against Fidelity Benefit Administrators, Inc. (the Counterclaims). Subject to the representations and warranties made herein and to the other provisions of this Retainer Agreement, [Herman Gerel] agrees to represent Fidelity both in the prosecution of Claims and in defense of Counterclaims. [Herman Gerel] will take all reasonable actions that are reasonably required to prosecute the Claims, to defend the Counterclaims, and otherwise to advance the interests of Fidelity. [Herman Gerel] will take reasonable steps to keep Fidelity informed of the Claims, Counterclaims, defenses, rulings and negotiations that materially affect the interest of Fidelity in this matter, and/or otherwise as the court may prescribe.

(*Id.* at ¶ 1.)

The "Amount Recovered" was defined in the Retainer Agreement as follows:

> [T]he gross amount of any recovery relating to the Claims before the deduction of any advanced or incurred litigation costs, whether such sums are established by settlement or judgment.  Amount recovered includes debt reduction, debt relief, and cancellation of any alleged indebtness [sic] of Fidelity.  The Amount Recovered shall be based solely on the recovery relating to the Claims and shall not be reduced by any (1) setoff or offset taken by Fidelity, (2) judgment, settlement, or reduction in recovery caused by or relating to the Counterclaims, (3) claim or lien asserted by any past, current, or future auditor of Fidelity, or (4) any other reduction of damages caused by the conduct of Fidelity (or any affiliated person or entity) that does not relate directly to the Claims. . . . If there is no Amount Recovered, no contingency or attorney's fees shall be due.

(*Id.* at ¶ 4.)

Plaintiff signed the 2004 Retainer Agreement on behalf of Fidelity in his capacity as Fidelity's Vice President and "for himself and as the Stockholders' Representative . . . ." (2004 Retainer Agreement 4.)  "In doing so, Mr. Knox represented and warranted that he had actual, express authority to enter into this agreement on behalf of his principals." (Herman Gerel Countercl. ¶ 13.)  Plaintiff represented to Herman Gerel, through his agent, David Fishbone, that: "(1) Mr. Knox's duties as the Stockholders' Representative included 'the prosecution of the ESI

3

litigation and defense of the counterclaim'; and (2) 'Tom [Knox] is the only person authorized to engage counsel and make decisions regarding the litigation.'"  (Herman Gerel Opp. Br. 9, ECF No. 54 (citing Herman Gerel Countercl. ¶ 10).)

>    3.    *Acquisition of Fidelity Insurance Group, Inc. by UnitedHealthcare*[4]

In March of 2004, Plaintiff and other Fidelity Insurance Group, Inc. ("Fidelity Group") stockholders ("Fidelity Stockholders"), pursuant to a Stock Purchase Agreement ("SPA"), sold their shares of Fidelity Group to UHC.  (Compl. ¶ 32 (citing SPA, Compl. Ex. D).)  After the sale of Fidelity Group's shares to UHC, both Fidelity Insurance and Fidelity Benefit continued in business as fully-owned operating subsidiaries of UHC.  (*Id.* at. ¶ 35.)  Concurrent with the execution of the SPA, Plaintiff entered into an employment agreement with UnitedHealthcare Services, Inc.  (*See* SPA 1.)

Pursuant to the SPA, the Fidelity Stockholders were to receive all proceeds from the ESI Litigation.  (*Id.* at § 1.02(a).)  The "ESI Proceeds" were defined as "the proceeds (it being acknowledged that the Stockholders or the Stockholders' Representative shall fund all related defense costs and expenses directly, and not out of the Escrow Funds) recovered by [Fidelity Group] in connection with the pending litigation between [Fidelity Group] and Express Scripts, Inc."  (*Id.* § 1.02(a)(iii).)[5]  The SPA further provided that:

> Promptly following the final nonappealable disposition of all claims and counterclaims between ESI and [Fidelity Group] and any of the Subsidiaries, and the receipt by [Fidelity Group] and the Subsidiaries of all amounts owing to them relating to such claims and counterclaims, [UHC] shall cause [Fidelity Group] to deliver the ESI Proceeds to the Stockholders by wire transfer of immediately available funds to the Stockholders' Representative for distribution to the Stockholders . . . .

(SPA § 1.08.)

---

[4] Fidelity Group owned Fidelity Insurance and Fidelity Benefit.  (Compl. ¶ 32.)

[5] Plaintiff was appointed as the Fidelity Stockholders' Representative.  (SPA § 11.14.)

In addition, the Fidelity Stockholders agreed to "indemnify [UHC] . . . and hold them harmless against any claim, loss, liability, deficiency, damages, amount paid in settlement, expense or costs (including reasonable costs of investigation, defense and legal fees and expenses)" arising from the ESI Litigation.  (*Id.* § 9.02; Schedule § 9.02(d).)  Plaintiff, as the Stockholders' Representative, had the authority to "contest, concede, settle, or compromise any claim relating to [Fidelity Group's] pending litigation with ESI (including any related claims or counterclaims) without the consent of [UHC] . . . ."  (Compl. ¶ 33 (citing SPA § 1.08).)  However, if

> (a) the claim seeks relief other than the payment of monetary damages, (b) the subject matter of the claim relates to the ongoing business of [Fidelity], which claim, if decided against [Fidelity], would adversely affect the ongoing business or reputation of [Fidelity] or (c) [UHC] would not be fully indemnified with respect to such claim, then, in each such case, [UHC] and the Stockholder Representative shall jointly participate in all decisions regarding such claim . . . .

(SPA § 1.08.)

Subsequent to the execution of the SPA, Herman Gerel and Plaintiff entered into the aforementioned 2004 Retainer Agreement.  The 2004 Retainer Agreement addressed the acquisition of Fidelity by UHC, stating that:

> Fidelity was acquired by UHC on May 11, 2004 and is a wholly-owned subsidiary of UHC.  By letter dated June 24, 2004 (attached), [Herman Gerel] disclosed to Fidelity all known potential conflicts of interest relating to its (or its members firms' or attorneys') litigation adverse to UHC.  As part of UHC's acquisition of Fidelity, the Fidelity shareholders retained all interest in the Claims and agree to indemnify UHC for any liability relating to issues alleged in the Counterclaims. Accordingly, UHC has no direct financial interest in the outcome of the Lawsuit.

(2004 Retainer Agreement ¶ 2(B) (emphasis added).)

### 4. *ESI's Third-Party Claims Against Fidelity Group and UHC*

On April 23, 2007, the district court granted ESI leave to file a second amended counterclaim against Fidelity, and a third-party claim against Fidelity Group and UHC.  (Compl.

¶ 37.)  ESI alleged that UHC was liable for any amount owed by Fidelity as a result of the litigation.  (Compl. ¶ 38.)  On July 1, 2007, as the result of a filed third-party claim, Herman Gerel and Fidelity entered into an Addendum to Retainer Agreement for Legal Services ("2007 Addendum").  (*Id.* at ¶ 39.)  The 2007 Addendum stated that "[a]ll terms of the July 21, 2004 Retainer shall remain in full force and effect unless otherwise provided below."  (2007 Addendum 1, Compl. Ex. E.)  The 2007 Addendum reiterated the terms of the SPA, stating that the "Stockholders have agreed to defend and hold UHC and [Fidelity Group] harmless from the Third-Party Claims pursuant to the terms of the Stock Purchase Agreement dated March 20, 2004."  (*Id.*)  Plaintiff, as the authorized representative of the Fidelity Stockholders, retained the services of Herman Gerel to defend the third-party claims.  (*Id.*)[6]  Herman Gerel agreed to provide a "pro forma defense to the Third-Party Claims" without adjusting the contingency fee structure set forth in the 2004 Retainer Agreement.  (2007 Addendum 1.)  Plaintiff signed the 2007 Addendum on behalf of Fidelity as the "[f]ormer CEO by Authorization from [UHC]."  (*Id.* at 2.)  Plaintiff also signed the 2007 Addendum on behalf of "himself and as the Stockholders' Representative" thereby providing the consent of the Fidelity Stockholders.  (*Id.*)

     *5.    The ESI Litigation*

From 2004 to August 2011, Herman Gerel pursued Fidelity Claims and defended the ESI Counterclaims on behalf of the Fidelity Stockholders.  (Herman Gerel Countercl. ¶ 24.)  Throughout the approximately eight-year period, Herman Gerel communicated with Plaintiff as the Stockholders' Representative.  (*Id.* at ¶ 25.)

In June 2010, Hermen Gerel advised Plaintiff that ESI had requested a settlement demand.  (*Id.* at ¶ 26.)  In response, Plaintiff asked Herman Gerel to prepare a chart summarizing

---

[6] Pursuant to § 9.04 of the SPA, the Fidelity Stockholders had the right to retain legal counsel to defend Third-Party Claims.  (2007 Addendum 1.)

recoveries to the Fidelity Stockholders based upon settlement demands in decreasing increments, accounting for Herman Gerel's fees and costs. (*Id.* at ¶ 27.) After receiving Herman Gerel's chart, Plainitff authorized Herman Gerel to make a multi-million dollar demand on behalf of the Fidelity Stockholders. (*Id.*)

In July 2011, summary judgment was entered against Fidelity on some of its claims against ESI. (Compl. ¶ 53; Herman Gerel Opp. Br. 20-21.) That same month, Plaintiff authorized Herman Gerel to settle the ESI litigation, which resulted in Plaintiff making a net payment of $350,000 to ESI. (Herman Gerel Opp. Br. 14-15.)

> 6.  *Herman Gerel Requests Attorney's Fees*

On August 11, 2011, Herman Gerel sent a letter to Plaintiff requesting payment of $1.25 million, which represented $625,000 in fees and $600,000 in costs for services rendered on behalf of Fidelity in pursuing the ESI litigation. (Herman Gerel Countercl. ¶ 34.) Herman Gerel claimed that because ESI settled its counterclaim for $350,000 instead of $2,867,064.41—the principal amount plus 18% interest for the unpaid invoices—Herman Gerel was entitled to fees and costs for the "significant reduction in ESI's counterclaim . . . ." (Compl. Ex. J.)

## B.  Procedural Background

The Complaint in this matter, seeking both declaratory and monetary relief, was filed on on April 25, 2012. In Count I, Plaintiff seeks a declaratory judgment that Plaintiff is not personally indebted to Herman Gerel for any attorneys' fees or costs. (Compl. 17.) Plaintiff also seeks declaratory judgment releasing him from any indemnification claims that UHC may have against him for such fees and costs. (*Id.*) In Count II, Plaintiff seeks a monetary judgment against Herman Gerel in an amount in excess of $61,000 for ESI litigation expenses purportedly advanced by Plaintiff. (*Id.* at 18.) In Count III, Plaintiff seeks indemnification against UHC for

any alleged fees owed under the Retainer Agreement.  (*Id.* at 19.)  In Count IV, Plaintiff asserted

a fraud claim against Herman Gerel for misrepresenting the circumstances under which

contingency fees and costs were owed under the Retainer Agreement.  (*Id.*)

On June 15, 2012, UHC filed a Motion to Dismiss Plaintiff's Complaint.  (ECF No. 8.)

Plaintiff responded on July 6, 2012.  (ECF No. 11.)  On June 28, 2012, Herman Gerel filed an

Answer to Plaintiff's Complaint.  (ECF No. 10.)  In addition, it filed a Counterclaim against

Plaintiff and a Crossclaim against UHC.  (*Id.*)  On July 30, 2012, Plaintiff filed an Answer to

Herman Gerel's Counterclaim and a Crossclaim against UHC.  (ECF No. 18.)

On August 20, 2012, UHC filed a Motion to Dismiss Plaintiff's Crossclaim.  (ECF No.

26.)  On September 7, 2012, Plaintiff filed a response with a Memorandum of Law in Support of

Plaintiff's Opposition to UHC's Motion to Dismiss.  (ECF No. 31.)

On September 17, 2013, UHC filed a Motion to Dismiss Herman Gerel's First Amended

Crossclaim (ECF No. 33), and on October 4, 2012, Herman Gerel filed a Brief in Opposition to

UHC's Motion to Dismiss Herman Gerel's First Amended Crossclaim (ECF No. 36).

On June 24, 2014, a Memorandum and Order (ECF Nos. 43, 44) were issued addressing

the above Motions.  Plaintiff's claims for indemnification from UHI in Count III of Plaintiff's

Complaint and in Count I of Plaintiff's Cross-Claim were dismissed.  (June 24, 2014 Order ¶ 1.)

In addition, Plaintiff's claim for contribution from UHC in Count II of Plaintiff's Crossclaim was

dismissed.  (*Id.*)  Finally, Herman Gerel's claims for quantum meruit and unjust enrichment in

Counts III and IV of its Crossclaim were dismissed.  (*Id.* at ¶ 2.)

On July 11, 2014, Plaintiff filed the present Motion for Partial Judgment on the

Pleadings.  Plaintiff attached a Memorandum of Law in Support of the Motion.  (Pl.'s Mem.,

ECF No. 46.)  On August 5, 2014, UHC filed an Answer to Plainitiff's Complaint and

Crossclaim against it, and asserted a Counterclaim and Crossclaim against Plaintiff.  (ECF No. 52.)  On the same date, UHC filed an Answer to Herman Gerel's First Amended Crossclaim, and asserted a Counterclaim and Crossclaim against Herman Gerel.  (ECF No. 53.)  On August 25, 2014, Herman Gerel filed a Brief in Opposition to Plaintiff's Motion (Herman Gerel Opp. Br., ECF No. 54) and UHC filed a Response to the present Motion (UHC's Resp., ECF No. 55). Plaintiff filed a Reply Memorandum of Law in support of the present Motion on September 22, 2014.  (Pl.'s Reply, ECF No. 62.)

## II.   LEGAL STANDARD

   Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Courts evaluate a Rule 12(c) motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6).  *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).  "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings."  *Sprague v. Neil*, No. 05-1605, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.38 (3d ed. 2004)). A motion for judgment on the pleadings will be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law."  *Knepper*, 675 F.3d at 257 (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).

## III.   DISCUSSION

   Initially, we must determine what law governs the dispute between these parties.  The Retainer Agreement contains a choice of law provision, indicating that Georgia law will govern.

(*See* Compl. Ex. C ¶ 10.)  "In evaluating whether a contractual choice-of-law clause is

enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state . . .

."  *Nuzzi v. Aupaircare, Inc.*, 341 F. App'x 850, 852 (3d Cir. 2009) (internal quotation marks

and citations omitted).  Pennsylvania law provides that when parties have contracted for a

specific body of law, the "[c]hoice of law provisions in [the] contracts will generally be given

effect."  *Smith v. Commonwealth Nat'l Bank,* 557 A.2d 775, 777 (Pa. Super. Ct. 1989); *Kruzitz* v.

*Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).  We will therefore construe the terms

of the 2004 Retainer Agreement, and the parties respective roles and obligations thereunder,

according to Georgia law.

> A.       **Fees under the Retainer Agreement**

Plaintiff seeks judgment on Count I of his Complaint.  He asks the Court to enter a

declaratory judgment that "no attorney fees or costs are owed to Defendant Herman Gerel, LLP

under the terms of the July 21, 2004 Agreement."  (Pl.'s Mot. 1.)  Plaintiff asserts that the

Retainer Agreement "provided for a contingency fee and reimbursement of costs to Herman

Gerel *only* in the event there was an 'Amount Recovered' on Fidelity's Claims against ESI."

(Pl.'s Mem. 2.)  Plaintiff argues that there is no reasonable basis to conclude that any such

amounts were recovered on Fidelity's Claims.  (*Id.*)

Under Georgia law, the core principal of contract construction is to "effectuate the intent

of the parties as set out in the language of the agreement."  *Shepherd v. Greer, Klosic &*

*Daugherty*, 750 S.E.2d 463, 465 (Ga. Ct. App. 2013) (citation omitted).  Georgia courts have

identified three steps to resolve issues of intent in contract construction:

> The first step is to decide whether the language of the contract is clear and
> unambiguous.  If so, the contract is enforced according to its plain terms, and the
> contract alone is looked to for meaning.  Second, if the language of the contract is
> ambiguous in some respect, the rules of contract construction must be applied by

the court to resolve the ambiguity.   And finally, if ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Bd. of Comm'rs of Crisp Cnty. v. City Comm'rs of City of Cordele*, 727 S.E.2d 524, 527 (Ga. Ct. App. 2012) (internal quotation marks and citations omitted).

Here, the parties do not appear to dispute the language of Paragraph four of the Retainer Agreement, which provides the terms under which Herman Gerel earned a contingency fee for its services.  Like Plaintiff, Herman Gerel asserts that the language of the Agreement allows for recovery of contingency fees only in the event that Herman Gerel secured a recovery on Fidelity's affirmative claims.  (Herman Gerel's Opp'n Br. 18.)  What the parties do dispute, however, is whether Herman Gerel recovered any portion of Fidelity's affirmative claims when it settled the ESI litigation.

Plaintiff contends that "[b]y way of orders issued on July 30, 2008 and July 7, 2011, Herman Gerel lost by way of summary judgment Fidelity's 'Claims' against Express Scripts." (Compl. ¶ 53.)  Therefore, Plaintiff argues, Herman Gerel could not have recovered any portion of Fidelity's claims as part of the Settlement Agreement.  (Pl.'s Mem. 15.)  Plaintiff, with UHC, further contends that even if there were surviving affirmative claims, Herman Gerel cannot establish, as required by the Retainer Agreement, that a gross recovery on those claims offset the total amount of the $350,000 ESI settlement.  (*See* Pl.'s Reply 6-8; UHC's Resp. 7-13.)  To support this argument, UHC has submitted a copy of the Settlement and Release Agreement, which purportedly represents the terms of the ESI settlement.[7]  (UHC's Resp. Ex. 1 (filed under

---

[7] Generally, "a Court may only consider the Complaint and the reasonable inferences therefrom in deciding a Rule 12(c) motion."  *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 257 n.6 (3d Cir. 2004), *as amended* (Mar. 8, 2004) (internal quotation marks and citation omitted).  However, the Third Circuit has recognized an exception to this general rule: when a document is integral to or explicitly relied upon in the complaint, it may be considered without converting the motion for judgment on the pleadings into one for summary judgment.  *Id.* at 256

seal, ECF No. 57).)  UHC asserts that because neither values for Fidelity's claims, nor ESI's counterclaims are definitively established in the document, Herman Gerel cannot seek recovery. (UHC's Resp. 10.)

Herman Gerel has submitted memoranda and orders from previous litigation to cast doubt on Plaintiff's contention that all of Fidelity's affirmative claims were dismissed prior to settlement.[8]  (*See* Herman Gerel's Opp'n Br. Exs. 1, 2.)  Herman Gerel contends that the orders and memoranda support its position that only some of the affirmative claims were dismissed on summary judgment.  (Herman Gerel's Opp'n Br. 20-21.)  In addition, Herman Gerel asserts that it can demonstrate that it "was prepared to present at trial proof of damages on the [surviving] Fidelity Claims in the amount of $1,742,291.47, plus interest."  (Herman Gerel's Countercl. ¶ 29.)  Therefore, it argues, we must conclude that Plaintiff has not met his burden in demonstrating that there was no "amount recovered" on behalf of Fidelity."  (Herman Gerel's Opp. Br. 21.)

We need not consider the additional memoranda and orders submitted by Herman Gerel to conclude that the ESI settlement could, in part, reasonably represent a gross recovery on Fidelity's affirmative claims.  When viewing all of the facts in the light most favorable to Herman Gerel, Plaintiff has not established that all of Fidelity's claims in the ESI litigation were dismissed on summary judgment.  In addition, the Settlement and Release Agreement submitted

---

n.5.  Therefore, the Court can consider, if it chooses, the additional exhibits submitted by the parties in reaching our decision without converting the present Motion into one for summary judgment.

[8] As an exhibit to the Complaint, Plaintiff attached a copy of the Eastern District of Missouri docket for the ESI litigation.  (Compl. Ex. A.)  Plaintiff offers the docket as evidence to support his claim that orders issued on July 30, 2008 and July 7, 2011 disposed of Fidelity's affirmative claims against ESI.  (Compl. ¶ 53.)  As Herman Gerel points out, however, there was no docket activity on July 30, 2008.  Defendant Herman Gerel believes that Plaintiff is referencing an order issued in the distinctly different multi-district litigation, *In re Express Scripts PBM Litigation*, No 4:05-md-01627 (E.D. Mo.).  (Herman Gerel's Opp. Br. 20 n.12.)

by United Healthcare does not demonstrate that the $350,000 payment represents only settlement on ESI's counterclaims.  Therefore, there is a reasonable basis from which to conclude that discovery will allow Herman Gerel to develop factual support for its claim that the ESI settlement represents a gross recovery on Fidelity's affirmative claims.[9]

### B.   Plaintiff's Personal Liability for Attorney's Fees and Costs

Since we cannot currently determine that no attorney fees or costs are owed to Herman Gerel, Plaintiff alternatively seeks judgment on Count I of his Complaint on a theory that he maintains no personal liability under the terms of the 2004 Retainer Agreement.  (Pl.'s Mot. 1.) Plaintiff asks the Court to enter a declaratory judgment that he is not personally liable to Herman Gerel "because he was not a party to the Retainer Agreement and only executed same in his capacity as corporate officer."  (*Id.*)  Plaintiff asserts that he executed and ratified the 2004 Retainer Agreement "solely in his official capacities as vice president and majority shareholder of Fidelity."  (Pl.'s Mem. 18.)  Plaintiff argues that there is no reasonable basis upon which to conclude that he personally guaranteed Fidelity's fee obligations to Herman Gerel.  (*Id.*)

### 1.   Timeliness of Plaintiff's Motion

On this issue, UHC contends that Plaintiff's present 12(c) Motion is premature because it was filed before the pleadings were closed.  It argues that, although the Motion is framed to

---

[9] In addition to asserting that no gross recovery was made on Fidelity's affirmative claims, Plaintiff asks the Court to declare that Defendant Herman Gerel is not entitled to reimbursement of costs totaling $760,946.33 because the costs are "totally unreasonable and, perhaps, even fraudulent."  (Pl.'s Mem. 15.)  Defendant Herman Gerel contends that it represented Plaintiff and Fidelity for approximately eight years, spending "thousands of hours" on the ESI litigation and incurring more than $760,000 in out-of-pocket costs.  (Herman Gerel's Countercl. ¶ 24.)  The 2004 Retainer Agreement specifically provides for the payment of "reasonable out-of-pocket" costs if there was an amount recovered on the claims.  (Compl. Ex. C ¶ 5.)  Even though the out-of-pocket costs may appear at first glance to be excessive, only further discovery will help the fact finder determine whether those costs were documented, itemized, and reasonable.  Therefore, material issues of fact remain as to the out-of-pocket costs incurred by Herman Gerel for its representation of Fidelity in the ESI litigation.

address only the dispute between Plaintiff and Herman Gerel, resolution of Plaintiff's personal liability to Herman Gerel directly affects UHC.  (UHC's Resp. 13.)  UHC asserts that if Plaintiff is relieved of personal liability for the 2004 Retainer Agreement, and Defendant Herman Gerel ultimately prevails in being awarded damages under the Agreement, "it will have a direct and prejudicial impact on UHC in this litigation."  (*Id.* at 14.)

"Generally, Rule 12(c) motions are only proper once the pleadings are closed and, in a multi-defendant case, the pleadings are not considered closed until *every* defendant has answered the complaint."  *Newton v. Greenwich Twp.*, No. 12-238, 2012 WL 3715947, at *1 n.1 (D. N.J. Aug. 27, 2012) (emphasis in original) (citing *Nagy v. De Wese,* 705 F.Supp.2d 456, 460 n.4 (E.D. Pa. 2010)).  However, courts maintain discretion in ruling upon a motion for judgment on the pleadings, even in cases where not every defendant has filed an answer.  *See Castillo-Perez v. City of Elizabeth*, No. 11-6958, 2014 WL 1614845, at *1 n.2 (D. N.J. Apr. 21, 2014) ("A court has discretion to entertain a Rule 12(c) motion even before all defendants have filed an answer, as long as no prejudice to any party would result.").

Plaintiff filed the present Motion on July 11, 2014.  UHC filed an Answer with crossclaims and counterclaims against Plaintiff and Herman Gerel on August 5, 2014.  (*See* ECF Nos. 52, 53.)  Therefore, the pleadings were not closed when this Motion was filed.

Even though the Court has had an opportunity to consider UHC's pleadings in its decision here, UHC argues that a ruling relieving Plaintiff of personal liability would prejudice it because Plaintiff could potentially be relieved of all personal liability.  (UHC's Resp. 15.)  What UHC fails to recognize, however, is that Plaintiff is seeking relief of personal liability only as it pertains directly to Herman Gerel.  Any indemnification claim that UHC has against Plaintiff and/or the former Fidelity Shareholders under the SPA, or any other agreements, for fees and

14

costs related to the ESI litigation will not be affected by our decision here.  Therefore, we conclude that the Court can properly exercise its discretion in ruling upon Plaintiff's 12(c) Motion against Herman Gerel.

> 2.    *Liability under the 2004 Retainer Agreement*

Turning to the question of whether there is a reasonable factual basis to hold Plaintiff personally liable to Herman Gerel for any breach of the 2004 Retainer Agreement, a corporation enjoys personhood fictitiously, and, therefore, can only act through its agents and other corporate stand-ins.  *Alexander v. Hulsey Envtl. Servs., Inc.*, 702 S.E.2d 435, 438 (Ga. Ct. App. 2010) ("A corporation is an artificial person and can only act through its directors, officers, agents, and servants.").  An authorized agent of a corporation is not personally liable for breach of a corporate contract in the absence of an express agreement to assume such liability.  *Action Concrete, Inc. v. Focal Point Eng'g, Inc.*, 675 S.E.2d 303, 305 (Ga. Ct. App. 2009).  The "corporate veil" may be pierced and the corporate fiction disregarded only when there is a showing "that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud or to evade statutory, contractual or tort responsibility."  *Derbyshire v. United Builders Supplies, Inc.*, 392 S.E.2d 37, 40 (Ga. Ct. App. 1990).  "Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends."  *Id.* (citing *Amason v. Whitehead,* 367 S.E.2d 107 (Ga. Ct. App. 1988) (internal quotation marks omitted)).

Herman Gerel entered into the 2004 Retainer Agreement with Fidelity on July 21, 2004.  Fidelity is named as the contracting party throughout the document.  Plaintiff signed the Retainer Agreement as Vice-President of Fidelity, and consented on behalf of himself and as the Fidelity Stockholders' Representative.  Indeed, the only part of the Retainer Agreement identifying

individuals by name is the portion directly below the signature lines.  (*See* Compl. Ex. C 4

("Edward C. Konieczny[,] Managing Partner" on behalf of Herman Gerel and "Thomas J. Knox,

Vice President" on behalf of Fidelity).)  As we have already concluded, "Plaintiff was clearly

acting as an agent on behalf of Fidelity when signing the 2004 Retainer Agreement." *Knox v.

Herman Gerel, LLP*, No. 12-2238, 2014 WL 2880277, at \*12 (E.D. Pa. June 24, 2014).

 Herman Gerel and UHC assert that because Plaintiff stood to personally benefit from the

contract, paid litigation related expenses from his own personal account, received

correspondence about the litigation, and made all litigation related decisions, he somehow agreed

to personal liability.  (Herman Gerel's Opp'n Br. 21-22; UHC's Resp. 17-18.)  Although Plaintiff

stood to personally gain from the ESI litigation as the majority stockholder, we cannot conclude

that he sought legal representation in his individual capacity.  Assuming that Plaintiff personally

funded, controlled, and benefitted from the ESI litigation, Defendants still have not provided a

factual basis to conclude that Plaintiff agreed to personal liability under the terms of the 2004

Retainer Agreement between Herman Gerel and Fidelity.

 Defendant UHC argues that Plaintiff incurred personal liability when he signed the 2004

Retainer Agreement "on behalf of himself and as the Fidelity Stockholder's Representative."

(UHC's Resp. 15.)  What it fails to note, however, is that the signature falls underneath the

heading: "CONSENT of the STOCKHOLDERS of FIDELITY INSURANCE GROUP, INC."

(Compl. Ex. C 4.)  To impute personal liability on Plaintiff from the language "on behalf of

himself . . . ," we would have to lift those four words out of context and ignore the fact that

Plaintiff was not personally named as a party to the contract.  Georgia law does not permit the

Court to exercise such broad discretion.  *See Bd. of Comm'rs of Crisp Cnty.* 727 S.E.2d at 528

(holding that courts shall read the contract as a whole, and "ambiguity is not to be created by

lifting a clause or portion of the contract out of context, nor are we to call forth doubt or make hypercritical constructions." (internal quotations and citations omitted)).  Therefore, we are compelled to conclude that Plaintiff is not personally liable to Herman Gerel for any alleged fees and costs associated with the ESI litigation.  *See Employer Reinsurance Corp. v. Laurier Indem. Co.*, No 03-1650, 2007 WL 1831775, at *13 (M.D. Fla. June 25, 2007) ("Under Georgia contract law, absent ambiguity, the Court is required to look only to the four corners of the contract.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Judgment on the Pleadings will be granted.[10]

An appropriate Order will follow.

BY THE COURT:

_____

**R. BARCLAY SURRICK,   J.**

---

[10] Plaintiff requests the court to enter a declaratory judgment on Count I of his Complaint. (Pl.'s Mot. 1.)  "The Declaratory Judgment Act allows a party to request a federal court, in a 'case of actual controversy within its jurisdiction,' to declare its rights and other legal relations, whether or not it will, or could, seek further relief."  *ITT Indus., Inc. v. Pac. Employers Ins. Co.*, 427 F. Supp. 2d 552, 560 (E.D. Pa. 2006) (citing 28 U.S.C. § 2201(a)).  Basically, in deciding whether declaratory judgment is appropriate, a court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).  The decree must be conclusive in nature and not rest "upon a hypothetical state of facts."  *ITT Indus., Inc.*, 427 F. Supp. 2d at 560.  Declaratory judgment is appropriate here, as Herman Gerel seeks to recover in excess of $1.5 million from Plaintiff in Counts I-IV of it Counterclaim for services it provided Fidelity in settling the ESI litigation.